MISSOURI–KANSAS–TEXAS RAILROAD
COMPANY of Texas, Appellant,

v.

Mrs. Beulah WRIGHT, Administratrix,
Appellee.

No. 15823.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 21, 1958.

Rehearing Denied March 21, 1958.

Wayne R. Howell, Gen. Counsel, Denison, G. H. Penland, Gen. Sol., Dallas, Vinson, Elkins, Weems & Searls, Ben H. Rice, III, and Dave McNeill, Jr., Houston, for appellant.

Helm, Jones, McDermott & Pletcher and Albert P. Jones, Houston, for appellee.

MASSEY, Chief Justice.

This is a Federal Employers' Liability Act case. One Roy Albert Wright, an employee of the Missouri-Kansas-Texas Railroad Company of Texas, sustained injuries resulting in death while acting within the scope and course of his employment. His widow was appointed Administratrix of his estate and brought suit against the Railroad for the use and benefit of herself and two minor children under provisions of the Federal Employers' Liability Act (F. E. L. A.), 45 U.S.C.A. § 51 et seq. The judgment entered, based upon the verdict of the jury, was in behalf of plaintiff. The defendant Railroad appealed.

Judgment affirmed.

There is no question but what the evidence was sufficient to support those jury findings relative to defendant's negligence. There are questions relative to the sufficiency of the evidence to support the amount of damages for which judgment was entered, of which there will be more anon. The trial judge found the jury findings upon the matter of damages to have been excessive by the amount of $15,000 and required a remittitur in such amount, which was made by plaintiff, and the judgment ultimately entered awarded damages totaling $73,000. The sum of $8,000 of this total resulted from a finding in such amount for the deceased's conscious pain and suffering after the accident and up until the time of his death.

For convenience, the plaintiff administratrix will ordinarily be termed plaintiff, with reference made to her as the widow and to her minor children as the occasion indicates. The defendant Railroad will be referred to as such. One Joseph Oliver Schubert, another employee of the defendant at time plaintiff's decedent sustained the injuries resulting in his death, died as the result of the same accident. His widow, as independent executrix of his estate, brought suit against the defendant Railroad in Federal Court under provisions of the F. E. L. A. The Schubert case had been tried prior to the time of the trial of the instant case. Pursuant to such trial a jury verdict in the amount of $60,000 was returned along with a finding that Schubert's own negligence contributed to the accident in proportion of 20%. Motion for judgment on that jury verdict was denied and a new trial was ordered. Hence, the Schubert case remained undisposed of and was pending at time of the trial of the case here on appeal.

Schubert was the foreman of the group of workmen in which plaintiff's decedent was a member. Schubert and his group were on a trip in a motor car along the defendant Railroad's tracks in Harris County, towing behind it some cars loaded with equipment and material. A point was reached where the tracks crossed the Texas & New Orleans Railroad Company (T. & N. O. R. R. Co.) tracks. At such point there was a control tower. The tower was known as the Eureka Tower. It was operated by the T. & N. O. R. R. Co. through employees selected for the purpose. In the motor car four men were seated on the left side and three men were seated on the right. On the left side Schubert was the first or front man. Plaintiff's deceased was sitting next to and behind him operating the controls in obedience to his instructions. Immediately prior to the time the motor car drove onto the crossing where it was struck by a T. & N. O. R. R. Co. switch engine, Schubert had orally instructed plaintiff's decedent to proceed past the crossing. This the deceased did, and as result thereof the fatal collision with the switch engine occurred. Immediately prior to the collision this engine was approaching the crossing on its own tracks from the right of defendant's motor car.

In the prior trial of the Schubert case the Railroad was represented by the same attorneys representing it in the instant situation. In pleading to the complaint made against it in the Schubert case the defendant had asserted several defenses, including assertion that Schubert had been negligent in respect to the fatal collision,— that his negligence constituted the sole proximate cause, and in the alternative the primary proximate cause, of the collision and of Schubert's resulting death. Allegations in the defendant's answer included assertions that Schubert had disregarded and failed to observe and abide by appropriate safety rules, had failed to keep a proper lookout, had failed to stop, and further that he caused the motor car to be driven and operated at an excessive speed under the circumstances and conditions existent at and near the point of collision. Incorporated in the Railroad's answer filed in the Schubert case, along with and as part and parcel of its allegations upon the matter of Schubert's negligence, was certain language typified as follows: " * * * the said Joseph Oliver Schubert was charged, under the rules of the Company governing his actions, as well as by his contract of employment as bridge foreman, with the duty to direct not only the men in his crew in the performance of their various duties, but also he had the sole control and direction of the operation of the motor car and had the primary duty and responsibility of seeing that the motor car was operated safely and in accordance with the rules of the Company governing the operation of such motor cars"; and " * * * this defendant says that as the said Joseph Oliver Schubert approached the crossing in question on the motor car, and over which he had the primary control and supervision as to its operation and manner of operation, * * *."

During the course of the instant trial the Railroad sought leave of the court to join as party defendant along with it the estate of the deceased Schubert, in order that any judgment rendered against it on account of the negligence of Schubert— committed in relation to his agency for the Railroad—could be sought over and against said decedent's estate, or so that relief by way of contribution might be sought in the same suit. Such leave was denied. In view of the denial the Railroad sought to suppress the pleadings in the Schubert case and requested that an order be entered prohibiting any use thereof, or of any record in the Schubert case, pursuant to the trial of the instant case (the Wright case). This likewise was denied. Following this, and during the course of the trial, plaintiff introduced parts of the Railroad's pleadings filed in the Schubert case. Such admission was over the strenuous objections of the defendant Railroad, but in view of their admission before the

jury the Railroad then sought to introduce the complaint filed against it in the Schubert case as an explanation of the circumstances existent at time its answer (containing the statements used as admissions against interest) was filed therein and as a justification for what it had alleged in its answer. This right was denied. In view of all the foregoing, the Railroad filed a motion requesting the trial court, in its charge to the jury, to inform and instruct the jury that the admissions could not be considered as evidence of the matters stated. The trial court refused to so charge the jury.

■ Considering initially the matter of the admissions as embodied in the answer filed in the Schubert case, we are of the opinion that they were properly admitted under general rules. See McCormick and Ray, Texas Law of Evidence, 2nd Ed., Vol. 2, p. 34, "Exceptions to Hearsay Rule—Admissions of a Party," sec. 1145, "Admissions in Pleadings—(b) Pleadings in Other Causes"; 31 C.J.S. "Evidence" § 303, p. 1075 (Admissions in Pleadings) "—In Other Cases"; 17 Tex.Jur., p. 571, "Evidence —Civil Cases," sec. 237, "Admissions in Pleadings."

■ Assuming that it would have been proper to have permitted the introduction of the complaint in the Schubert case, rather than denied, the matter of whether such exclusion amounted to reversible error would be controlled by the provisions of T. R. C. P. 434. The Railroad is therefore burdened with the obligation to show that the trial court's exclusion of the proffered evidence was reasonably calculated to cause and probably did cause the jury to return a verdict contrary to that which would have been returned had the evidence been admitted. This burden has in our view not been discharged.

It is to be observed from the case of Coats v. Elliott, 1859, 23 Tex. 606, that it might properly be said that if reception of the text of plaintiff's petition in the Schubert case would have added to the information possessed by the jury, or have been of aid to it in the just estimate of the weight to be given to the admissions proved to have been made by the defendant in its answer, the petition should have been admitted as explanation of the admissions made. By the same token, if the petition's introduction would not have added to such information and not have aided the jury in a just estimate of the weight to be given the admissions, the court could properly decline to receive it. See Wigmore on Evidence, 3rd Ed., Vol. IV, p. 23, "Extrajudicial Admissions," sec. 1059, "* * * Explanations; * * * Putting in the Whole of the Statement"; McCormick and Ray, Texas Law of Evidence, 2nd Ed., Vol. 2, p. 26, "Exceptions to Hearsay Rule—Admissions of a Party", sec. 1128, "Admissions not Conclusive—Explanation of Same—Right to Show Entire Statement."

■ In the instant situation the admissions were particularly damaging to the Railroad, not because they consisted in allegations of negligence on the part of Schubert—more or less identical to its allegations of negligence on the part of the plaintiff's decedent—but because as to Schubert the allegations went so far as to assert that he had sole control and direction of the crew and of the operation of the motor car, etc. Due to the necessities incident to pleading for a plaintiff in F. E. L. A. cases the plaintiff in the Schubert case (as in the instant case) had alleged that the injuries resulting in death resulted because of the negligence and carelessness of the Railroad—by and through the individual or individuals acting as its agents—other than (any negligence of) the deceased because of whose injuries and death suit was brought and prosecuted. Yet, it was not necessary for the answer filed in the Schubert case to have asserted that Schubert had the sole control and direction of the motor car, etc., and the pleadings filed by the plaintiff in that case did not in themselves furnish any explanation or reason why the Railroad went to the lengths it did in making the allegations in its answer. The plaintiff in

the instant case found that parts of such answer had become useful to her as admissions. The tender of the evidence in the form of the complaint in the Schubert case was not supplemented by any other evidence indicative of any necessity for the Railroad's allegations, and the complaint stands alone as the only evidence through instrumentality of which the Railroad seeks to make an explanation. But in and of itself that petition neither furnishes any explanation or reason why the Railroad's admissions were made, nor does it demonstrate circumstances which would suggest a significance as to the statements of the answer which would be beneficial to the defendant Railroad or of aid to the jury in making a just estimate of the weight to be given the admissions against interest therein made. In view thereof the trial court properly denied leave to introduce such instrument of complaint. As previously stated, we are furthermore of the opinion, if we err in such conclusion, that the defendant has not demonstrated the degree of harm requisite to a reversal under T. R. C. P. 434.

Before discussing the matter of propriety of the trial court's ruling in refusing to permit the Railroad to make the estate of Joseph Oliver Schubert a party to this suit, we will consider the trial court's refusal to instruct the jury that it should not consider the Railroad's answer in the Schubert case as any evidence of the matters therein stated. The nature and form of the admissions in the answer were extrajudicial in character and expressed conclusions of fact on the part of the defendant. The admissions were in the nature of hearsay rather than as to actual fact, as per the examples considered in 17 Tex.Jur., p. 582, et seq., "Evidence—Civil Cases," secs. 242–245, inclusive. Of course, under the circumstances of this case the admissions in and of themselves could not have constituted evidence sufficient to support a judgment for the plaintiff. But there was a great deal of evidence upon which the jury could find as it did on the primary negli-

gence issues of the plaintiff. In connection with such evidence the admissions were cumulative. In the determination of the answers returned the jury was entitled to give such probative force to the admissions as it desired to in passing upon such other evidence. 17 Tex.Jur., p. 580, "Evidence—Civil Cases," sec. 241, "Weight" (to be given Admissions and Declarations against Interest). The trial court did not err in its refusal to give the special instructions requested to be included in the charge to the jury.

We are of the opinion that the trial court, in the exercise of its discretion, properly denied the defendant Railroad's motion for leave to bring in the Schubert Estate as a third party defendant in the instant suit. The Railroad remained free to prosecute its suit for indemnity or contribution against the Schubert Estate in the event that judgment for damages was entered against it in the instant suit and became final. Union Bus Lines v. Byrd, 1944, 142 Tex. 257, 177 S.W.2d 774. Furthermore, the Schubert case already pended in Federal Court and jurisdiction had attached to both the parties and the cause of action existent because of the claim that the Railroad was liable to Schubert's Estate under the Federal Employers' Liability Act. The Act itself conferred the right upon Schubert's Estate to prosecute that action in the Federal Court. Under the circumstances of the case, the allowance of the defendant's motion would have likely operated to nullify a part if not all of the incidents of the right so conferred.

From what has already been said, the defendant Railroad's answer was admissible in evidence as an admission against interest in the instant case. The fact that reception thereof was coupled with the refusal to permit the Schubert Estate to be joined as a party defendant would not constitute a circumstance which would alter the general rules under which we hold the admissions receivable.

Defendant Railroad's first six points of error (1, 2, 3, 3-A, 4, and 5) are all related to the matter of misconduct on the part of plaintiff and plaintiff's counsel, and to such in particular as related to the jury's substantial verdict for damages. The defendant places great stress upon these points of error, having devoted the major part of its brief to them. We will attempt to properly consider the rather exhaustive briefing supplied us upon them.

As to the damages the widow and children of the deceased sustained as the result of his death (disregarding the damages allowed for conscious pain and suffering before death) the jury found the amount of $80,000. The trial judge required a $15,000 remittitur as to such damages so found and plaintiff filed one. The damages in such respect for which judgment was entered was therefore $65,000. From a perusal of the entire record we have arrived at the conclusion that if in the event the misconduct of which the defendant Railroad complains did actually result in an erroneous verdict, it would be because of the jury's findings upon the matter of damages to the extent of $80,000.

In other words, it is our conclusion, from an examination of the record, that application of T. R. C. P. 434 to the verdict of the jury, in the light of the whole record, warrants elimination of any question about whether the jury was probably caused or persuaded by the alleged misconduct during the course of the trial and in the argument of plaintiff's counsel to answer any of the issues upon negligence and proximate cause in a way other than it did answer them. We could elaborate thereupon, but in view of the evidence, largely undisputed, we decline to find that the jury was (on account of the matters complained of) probably persuaded to make findings other than those which would have been returned by it had the alleged errors not occurred. See Goforth v. Alvey, 1954, 153 Tex. 449, 271 S.W. 2d 404. Furthermore, as will be hereafter observed, the alleged acts complained of as amounting to misconduct were not acts

which would have had a persuasive effect upon the findings of negligence and proximate cause or would have operated as a persuasive influence upon the jury in its consideration of those issues, but could only have had such an effect or operated as a persuasive influence in relation to the issues on damages. Ligon v. Green, Tex.Civ. App. Fort Worth, 1947, 206 S.W.2d 629, writ refused, n. r. e. See also Mrs. Baird's Bread Co. v. Hearn, Tex.1957, 300 S.W.2d 646, and Cloud v. Zellers, Tex., 309 S.W. 2d 806, presently reported only in Texas Supreme Court Journal No. 18, Vol. 1, p. 222.

A serious question is presented when the answers to the special issues upon damages are considered. It was established that the plaintiff's decedent was 49 years of age (and nearing his 50th birthday) when he died, and that he would have had a life expectancy of 22.12 years. His wife, the plaintiff, had a life expectancy longer than that of the deceased. Calculations based upon his prior earning capacity demonstrated that, but for his death, he would have probably earned an amount falling somewhere between $30,000 and $45,000 during such period of his life expectancy, and also raised the question, by sufficient evidence, entitling the jury to find that he might have earned as much as approximately $60,000.

As to the $80,000 finding on damages, the defendant Railroad claims the misconduct operated to cause the jury to assess an amount greatly in excess of the damages established by the evidence, all as result of passion and prejudice engendered by misconduct. Defendant asserts further its *conclusion* that the trial court found such to be true and that the remittitur required was on account of the presence of passion and prejudice of the jury which the judge believed played a part in the verdict.

In the nature of an alternative assertion, the defendant further says that inadmissible testimony of Lloyd K. Friedman, an actuary, relating to the cost of an annuity

which would yield $300 per month operated to cause the jury to believe there was testimony in the record which would support its $80,000 finding on damages, when such was not the case in view of the fact that the evidence demonstrated that the deceased only received about $200 per month average in "take home" pay.

In our analysis it is to be remembered that we have the acts and events and testimony complained of in the record unaided by anything shown in supplement, other than the jury findings which were returned, demonstrating that the allowance by such findings probably resulted to the defendant's prejudice. By this statement we of course mean prejudice amounting to a denial of the Railroad's rights in that such acts, events and testimony probably did cause the rendition of an improper judgment as well as having been reasonably calculated to cause such character of rendition. T. R. C. P. 434.

We will attempt to generally demonstrate the alleged misconduct which the Railroad believed was so prejudicial that a remand of the cause for another trial would be the proper order to be entered by this court or the Supreme Court. A part of it occurred during the introduction of testimony or during the progress of the trial after the jury was empaneled, and we will start with a résumé of this.

In connection with the introduction of the defendant Railroad's answer in the Schubert case the plaintiff used the Deputy United States Federal Court Clerk. Thereafter this witness was taken on cross-examination by the defendant, who desired particularly the complaint filed in the Schubert case, but as will be noticed asked for other instruments by asking the following question: "Mr. Anderson, when you get back to the Federal Clerk's office, will you prepare for me, and I will call for them and expect to pay the usual fee, of course, a certified copy of the *Plaintiff's Petition* in the case of Mrs. Emma Schubert, Independent Executrix against this defendant,

*and a copy of the verdict of the jury, and of the court's order setting aside the verdict of the jury?"* (Emphasis supplied.) Counsel for the plaintiff then stated: "Now, Your Honor, please, counsel has violated your ruling (relative to excluding the allegations made in the plaintiff's petition in the Schubert case). *Briefly, the jury awarded $60,000 in that case and because counsel,—Do you want to go into the reason?"* (Emphasis supplied.) Immediately the defendant moved for a mistrial. The court retired the jury and heard an argument of counsel for both parties culminating in the order of the court overruling the motion for mistrial. The jury was brought back in and the defendant requested that the court instruct the jury to disregard the statement made by plaintiff's counsel on the verdict of the Schubert case. This the court did, and it is to be noticed that the defendant did not renew its motion for mistrial after the instruction was given.

The Railroad used as a witness a Mr. Coker, who was its employee and representative and who was present at a time when a Mr. Jones, its claim agent, was making an investigation of the facts of the accident and who talked with witnesses at the hospital. Plaintiff took this witness on cross-examination and asked questions and received answers as here noted, coupled with actions of the court upon objections interposed:

"Q. They (the defendant Railroad) knew then from the 20th day of November, 1953 that it wasn't their fault but it was the T & N O Railroad Company's fault then, didn't they? A. I don't know about that.

"Q. After the statute of limitation is run two and a half, three years, now then it is all SP's (the T. & N. O. R. R. Co.) fault, isn't it?

(At this point the defendant's attorney objected and requested that the jury be instructed not to consider the question. Objection was sustained and the jury was instructed as requested.

Defendant's attorney then moved for a mistrial, which motion was denied.)

"* * *

"Q. While he (the claim agent) was talking to the witnesses in the hospital with the court reporter there and all that business, did you and Mr. Jones get up and say this $110,000; several months later I imagine it was this suit was filed, did you and Mr. Jones get up and say this $110,000 that this widow desires for losing her husband, and these boys, I guess M K T doesn't owe it, that Southern Pacific owes it?"

(At this point the defendant's attorney objected and requested that the jury be instructed not to consider the question "and in the alternative now move for a mistrial." The court then told the jury that it should not consider the question for any purpose, saying nothing relative to the (alternative) motion for mistrial. Defendant's counsel did not insist that the court rule further.)

The defendant Railroad contends that certain testimony elicited on cross-examination from its witness Lloyd K. Friedman, an actuary, was improper. It appears that the average "take home" pay of the deceased for the period of several years next prior to the date of the accident was about $200 per month. The defendant used the witness to prove that during the expectant joint lifetime of the deceased and his wife (but for the fatal accident), with an assumption that the "take home" pay would be constant, the present value thereof (using 3% interest) would amount to approximately $30,000. Defendant further endeavored to point out that even had this approximate amount been "taken home," the deceased (but for his death) would have required a part thereof for his own living expenses, over and above those of the balance of the family.

Certain testimony introduced in behalf of the plaintiff was to the effect that the gross amount received by the deceased for his final month of work (not including certain deductions which would necessarily have to be taken therefrom) was approximately $315. Further testimony was to the effect that the deceased turned over his last pay check to his wife, who used it to pay house rent, grocery bills and other bills, and that it took all of it to maintain the family (including of course the deceased).

When the actuary, Mr. Friedman, was taken on cross-examination, counsel for the plaintiff had him calculate the amount of money which the deceased would have received, based on monthly earnings of $315, had he lived to be 70, 75 and 80 years of age and continued working. In answer to the questions Mr. Friedman testified to the figures $81,270, $100,170 and $119,000, respectively. Finally, over strenuous objection of the defendant, counsel was permitted to elicit from the witness that the cost of a single premium annuity which would pay the deceased, had he lived, the sum of $315 per month for the rest of his life would amount to $72,828.

The Railroad complained of several instances where in connection with the testimony from the plaintiff herself the following occurred.

The deposition of plaintiff had been taken prior to time of the trial, and during the course of its taking she had testified as to a reason why she could not work on a certain occasion that "'she had an invalid daughter.'" The Railroad objected to the introduction of this statement from the deposition and the objection was sustained and the statement excluded. Thereafter, when plaintiff was testifying from the stand, on direct examination, the following occurred:

"Q. Why weren't you working? A. I have an invalid afflicted and blind mother.

"By Mr. Rice: We object to that testimony. It is irrelevant and immaterial and has no issue in this lawsuit. It is wholly immaterial.

"By the Court: Sustain the objection.

"By Mr. McNeill (also of counsel for defendant Railroad): Because of the nature of the testimony injected into the testimony in front of this jury, there is no way the Court can instruct the jury and withdraw the harmful effect and inflammatory effect on the jury and we move for a mistrial.

"By the Court: Overrule the objection. The jury will not consider that testimony in arriving at your verdict."

Plaintiff's counsel also asked her the following:

"Q. Were the conditions and surroundings (such) that would be conducive to the happiness of his sons? A. Yes, sir.

"By Mr. Rice: We will object to the last question and answer, your Honor, and move to strike it, and again re-urge our motion for mistrial, and ask the Court to instruct the jury not to consider it, and again renew our motion for mistrial.

"By the Court: Sustain the objection and I ask the jury not to consider it."

Upon cross-examination the following occurred:

"Q. Did you ever have occasion to complain of his refusing to support you from the time you moved to Houston until the time this occurred?

"By Mr. Helm: If you did, tell him about it. I don't know if you did or not.

"A. You know, that is just married life, family fusses and spats, something like that, you know, but so far as a husband and father, he always was to us.

"Q. I am not talking about spats like we all have, I am talking about whether or not you had occasion to complain?

"By Mr. Helm: If he has some specific case?

"By the Court: I will ask Mr. Helm to let him ask the questions.

"By Mr. Helm: Your Honor, I will have to object to it.

"By the Court: Speak to him, don't address the witness.

"By Mr. Helm: Counsel is asking general questions, a general question. If he has some letters he dug up some place.

"By Mr. McNeill: We object to that and ask the Court to declare a mistrial. I can't get a fair trial on that kind of conduct. We ask the Court to declare a mistrial.

"By Mr. Helm: They don't want to try the case.

"By Mr. McNeill: Yes, we do want to try the case.

"By the Court: Overrule the objection."

Further, during the cross-examination of the witness, and after the defendant Railroad had produced certain letters but not yet introduced them into evidence, and at a time when a predicate was being laid whereby the defendant would show that some years prior to a reconciliation of plaintiff and her deceased husband (which reconciliation had been effected several years prior to the fatal accident), she had had cause to complain that her husband was not supporting her and his children, pursuant to which complaint she had written letters to the Railroad in an attempt to have it bring pressure to bear upon her husband (its employee) to influence him to do the right thing by his family,—an interruption was effected by Mr. Helm (plain-

tiff's counsel) pursuant to an attempt to see the letters or to give plaintiff time to reflect upon her answer to the questions asked. The following demonstrates what occurred:

"Q. Mrs. Wright, will you examine that and see if you didn't write that letter? Did you write the letter?

"By Mr. Helm: Let me see the letter. I am entitled to see it.

"By the Court: You can see it after she answers.

"By Mr. Helm: You don't want me to see it?

"By Mr. McNeill: No, no, no. Now, I object to that, your Honor.

"By the Court: Mr. Helm, he don't want you to see it.

"By Mr. McNeill: He will have plenty of time to look at that.

"By Mr. Helm: All right. I will close my eyes and I won't look at the letter. He don't want me to see it.

"By Mr. McNeill: We object to that kind of conduct, your Honor.

"By Mr. Helm: I don't see that this would have anything to do with it.

"Q. Did you write it? (To the witness)

"By Mr. Helm: If you wrote it I want you to say so. I don't care what you said. You can explain whatever you wrote. Maybe you said things that weren't true. Just tell him.

"Q. Did you write the letter?

"By Mr. Helm: Just tell him if you wrote the letter.

"A. Yes.

" * * *

"By Mr. McNeill: We offer it.

"By the Court: Now, counsel.

"By Mr. Helm: Don't say anything until we have read the letter. If they want to introduce that kind of stuff, I request they read it to the jury themselves and not make the jury read it. I want them to read it out loud.

"By the Court: Is there any objection to the introduction of the letter?

"By Mr. Helm: No, we have no objection if they want to use that kind of tactics.

"By Mr. McNeill: We object to that, your Honor.

"By the Court: The jury will not regard that statement.

" * * *

"Q. Didn't it get so bad in 1949, you filed suit for divorce and stated the defendant never did support you and that the plaintiff had had to ask for support from her parents?

"A. Definitely he supported them. I had reason to stay in that little town. My mother was dying from cancer.

" * * *

"By the Court: I will rule the answer is unresponsive and move it be stricken from the record.

"By Mr. McNeill: May we in connection with that again move for a mistrial?

"By the Court: Overrule the motion.

" * * *

"Q. Yes, Ma'am, I know that (that when you file a suit for divorce you have to have some ground—to tell something so you can get a divorce), but you didn't say something that wasn't so. If you stated in this divorce petition the reason you wanted a di-

vorce was because he wouldn't support you, you mean you didn't mean that?

"A. He was supporting. At that time I had an invalid daughter and a dying mother.

"By Mr. McNeill: We object to that *as unresponsive* and that it is *so prejudicial* we ask for a mistrial. (Emphasis supplied.)

"* * *

"By the Court: Overrule the objection."

Besides the defendant's complaints relative to the conduct of plaintiff's counsel, as reflected by what has heretofore been outlined, further complaint is made relative to statements made to the jury in examining the panel and during the argument.

The matter brought out during the examination of the panel was not such to our mind as would have had any effect upon the issue of damages, hence will not be commented upon, especially since we have already held that except perhaps as applied to the matter of damages there was no error which could have warranted a reversal, and since our discussion here relates to the events under consideration which could have resulted in an erroneous verdict on account of the answers returned relative to damages.

In the course of the argument to the jury by plaintiff's counsel, he stated the following:

"On the afternoon of this tragic accident who was out there? My good friend Brother Jones sitting on the back seat. (Referring to defendant's claim agent, Mr. Jones, who was not a witness, but was present in the courtroom.) He started out up here but as this case went stronger and stronger against them he has moved to the back row in the Courtroom, and I don't much blame him. He was out there with a Court Reporter and another lawyer and they purported to investi-

gate all the facts about this accident at that time, on that fatal day of the 20th of November, 1953. On the next day, the next very day, where did we find Mr. Jones, seated on that back row now, not up here in the front of the Courtroom? We found him with Mr. Ikeman. Who is Mr. Ikeman? He is one of the chief investigators and claim agent of who? Of this monster railroad over here, this T & N O, this Southern Pacific, this monster over here. Oh, they are hating each other now that the statute of limitations is past, this two and a half years. Oh, whose fault is it now? The T & N O. Oh, they were so negligent out there with all the air out of the cars, backing them across that Eureka Junction. And, Oh, that T & N O, they are terrible people. I wonder if they have the same arrangement in the defense of this case that they had in bearing the expenses of the maintenance of that tower out at Eureka Junction. I wonder if that is a 50-50 proposition, you pay $55,000.00 of this $110,000.00 and we pay the other $55,000.00. And, I wonder if that is,—"

Objection to the argument was because it was outside the record, was inflammatory and was in the nature of a statement that insurance was involved in the case. The jury was instructed by the court not to consider the argument, but the Railroad's additional motion for mistrial was overruled.

"You notice that, of course, this $72,-800.00 down here. That is $72,800.00 now, what is that for? That is the real test. You can take all your figures, all your experts. You can take your actuaries. You can take your mortality tables and everything under the sun. But the real test is what is the market value price to a layman and individual and to a citizen. If that citizen had to start out to replace that loss.

"* * *

"All right, now then. What is the market price that this woman, that this widow would have to pay to get the monetary loss, not the return of lost goods. You understand I am talking about the court's charge. You can't charge the railroad with the loss of companionship and all that, just what is the market price she would have to pay for a single premium annuity to bring her in that money. That market price is $72,800.00. I don't care what figure you take, what actuary, and all that.

" * * *

"When that man died he was a faithful husband and faithful father, and was turning over that little paycheck. It wasn't much of a paycheck but he was turning it over. It was all he had. That is the test, what they were getting at the time of his death.

"I don't believe there is a single person on here that will get in there and cut down these damages. This case is about how much can they get you to cut off that $110,000.00. What are those letters worth to them? They had them carefully kept all these years. Be careful what you write to the railroad."

Motion for mistrial was made because the entire argument of plaintiff's counsel was of such type that it could not be cured by an instruction, which motion was overruled by the court.

It is to be noted that though termed "objection" in accord with the usage of lawyers in trial of a case the counsel for the defendant Railroad was quick to "move to strike" evidence from the record immediately after it was injected into the case under circumstances by him deemed erroneous. Except for two instances the trial court promptly instructed the jury that it should not consider the matter so injected. Where counsel also moved for a mistrial it was in each instance overruled. The two above mentioned instances in which counsel's objections were overruled were: (1) where he "objected" to plaintiff's counsel stating "Counsel is asking general questions, a general question. If he has some letters he dug up some place"; and (2) where he "moved to strike" and for a mistrial because the plaintiff on cross-examination answered unresponsively "He was supporting. At that time (the time being some fourteen (14) years prior to the time of the trial and when she had filed a petition for divorce) I had an invalid daughter and a dying mother."

In the course of the jury argument by plaintiff's counsel and where certain statements were objected to as being outside the record and inflammatory the court instructed the jury not to consider the argument complained of, but overruled the motion for mistrial. The balance of the argument, not objected to as and when made, related to statements made by plaintiff's counsel which defendant contended urged the jury to disregard the court's charge relating to the proper measure of damages. As to the latter, the error, if any, is of a character the harmful effect of which would ordinarily be cured by an instruction to the jury, just as the former was cured by the objection and instruction, or would be considered cured in ordinary instances.

There is some doubt as to whether the Railroad preserved its right to complain of error relative to some of the incidents above outlined, but we believe that disposition would be the same even when we treat all of such errors as though they were preserved.

Though application of the rules stated in the case of Texas Employers' Ins. Ass'n v. Haywood, 1954, 153 Tex. 242, 266 S.W. 2d 856, 858, resulted in a reversal of the judgment under consideration, we consider the discussion of the rules there made to be more appropriate to the instant controversy than any case cited to us,—and furthermore are of the opinion that the application of such rules to the instant case

determines that reversal of the judgment under attack is not to be effected under points of error here considered.

In the Haywood case it is pointed out that whether the error complained of stems from the injection of new or different evidence before the jury, or improper evidence before the jury, or evidence or argument calculated to inflame the minds of the jury and arouse their passion of prejudice, ordinarily its harmful effect upon the verdict is removed by a proper instruction from the court. While speaking only of argument the following quotation from the opinion—to our minds—would apply to statements made by counsel or witness during the course of trial, viz.: "What matters it that the argument is of a particular type or falls into a particular category? The true test is the degree of prejudice flowing from the argument—whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict."

■ Though the opinion antedates the abolition of the doctrine of presumed prejudice pursuant to the adoption of Rules 434 and 503, T. R. C. P., and is to be interpreted in the light of such rules, the two primary rules relative to error are well outlined in the case of Ramirez v. Acker, 1940, 134 Tex. 647, 138 S.W.2d 1054, along with comment upon the duty of the trial judge in the maintenance of his control of the trial. The law as expressed by this opinion is to be viewed in the light of the Rules of Civil Procedure, and considered along with the statements of Judge Calvert in the Haywood case. Particularly do we deem this to be a requisite in the instant situation where the individual occurrences contended to be error would be considered waived or cured or immaterial within their individual selves, but where the basic complaint is that the cumulative effect thereof produced reversible error. Therefore, we ask the question: "Did the degree of prejudice flowing therefrom under the circumstances of this particular case so operate upon and affect the minds of the jury that the various instructions given the jury to not consider the testimony and argument complained of failed to eliminate the probability that the same resulted in an improper verdict?" We have arrived at the answer: "Such (the degree of prejudice) did not so operate upon and affect the minds of the jury."

It follows that we have decided the points of error in the relationship considered against the complaining defendant Railroad, i. e., that the error, if any, was not such as probably caused the jury to return a verdict other than that which it would have returned had the error (or errors) not occurred.

■ It is in order to note that the first point of error is overruled by what we stated and our additional holding to the effect that error relating to the issues upon negligence, contributory negligence, etc., was not sufficient to occasion reversal under T. R. C. P. 434. Point of error No. 3–A is overruled by what has been stated, and for the additional reason that the trial court's order requiring a remittitur with no reason stated therefor is not to be considered or treated as having resulted from any implied finding that any passion or prejudice against the defendant was reflected in the jury's finding of $80,000 as a figure of damages. The trial court's action in requiring a remittitur could properly be treated as an implied finding on its part that the evidence supported a finding of damages only to the extent of $65,000 and that any amount in excess thereof could not stand because the record would support no more. That being true the requirement of the remittitur was a proper act which in no way operated prejudicially to the plaintiff's case as the result of her compliance with the requirement.

■ Points of error Nos. 4 and 5 are overruled by what has been stated, and for the additional reason that we are of the opinion that the testimony elicited from the actuary, Lloyd K. Friedman, on cross-examination was properly admissible upon the issue of damages, and because the weight to be given his testimony was for the jury's determination. We are furthermore of the opinion that under the evidence the jury was entitled to consider that the deceased's earnings might be expected to increase and the degree of such increase, and that his income from earnings might extend over a greater period of time than the rather limited time until customary retirement age to which the defendant contends he should be bound. Additionally, the jury would not be limited in calculation of the plaintiff's damages and the damages of the deceased's children to the measure provided solely by calculation of the actuary. This will be further commented upon in our discussion of the special issue by which the question of damages was submitted to the jury. However, it is to be noted that the matter of the cost of annuities was proper to be taken into consideration by the jury so long as the range within which the payments such would yield relate to the proof upon amounts a deceased might reasonably have been expected to receive had he lived. We have no occasion to test the $80,000 jury finding as to the sufficiency of the evidence in support thereof, but, in view of the remittitur, our test is related to the figure of $65,000 to which such amount was reduced. This amount we believe to be supported by properly admitted evidence of sufficient probative force to support the judgment as related to said amount.

■ Point of error No. 6 contends that the manner in which Special Issue No. 35 was submitted to the jury led the jury to believe that plaintiff and those in whose behalf she sued could recover for the mental anguish they suffered in their awareness of the deceased's pain and suffering, thereby leading to an excessive verdict.

Special Issue No. 35 reads as follows:

"What sum of money, if any, do you find from a preponderance of the evidence would fairly and reasonably compensate the plaintiff for the conscious pain and suffering endured by Roy Albert Wright prior to his death, if you have so found that he did suffer conscious pain and suffering from a preponderance of the evidence?

"Answer: $8,000.00 (the answer returned) which we apportion between plaintiff, the surviving wife and minor children, as follows:

"To Mrs. Beulah Wright: $6,000.00 (answer returned)
"To James H. Wright: 1,000.00 (answer returned)
"To Will E. Wright: 1,000.00 (answer returned)"

In defendant Railroad's amended motion for new trial there is no complaint of the amount found by the jury in reply to the question posed, therefore we direct our inquiry to the text of the issue and the complaint made thereof. We do not believe that the issue as framed did lead the jury to believe that there could be a recovery for the mental anguish suffered by the widow and children during the period when they were indeed suffering such between the time of deceased's injury and his ultimate death. We fail to see where the issue as framed tended to inform the jury that there could be a recovery for mental anguish on the part of such persons. It is true that there was no instruction given by the court to the jury directing that it could not take such into consideration or make any allowance therefor, but the defendant Railroad did not request any instruction. Since there was no instruction at all, it is apparent that if there was any impropriety of the nature complained of it could have been cured by an instruction of limitation, and if the complaint be treated as made because of the failure to so instruct the jury it would not be an objection

which would be preserved on appeal since the defendant did not submit a substantially correct explanatory instruction in writing to the court for its consideration and submission in qualification or explanation of the issue. T. R. C. P. 279; Yellow Cab & Baggage Co. v. Green, 1955, 154 Tex. 330, 277 S.W.2d 92.

In view of the fact that the defendant's amended motion failed to complain of the amount found by the jury in its answer to Special Issue No. 35, we are of the opinion that point of error No. 10 is no more than a duplication of point of error No. 6. Since the one is overruled, the other is likewise necessarily overruled.

In the defendant Railroad's point of error No. 7 it is contended that the jury's answers (all and several) finding that plaintiff's decedent was not contributorily negligent, and refusing to find in accord with defendant's theory that the action of the T. & N. O. R. R. Company's switch engine operator constituted the sole proximate cause of the collision, were so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

 It is to be remembered that the burden of proof upon these matters, and likewise the burden of obtaining findings favorable to the Railroad, was upon the defendant. The defendant Railroad asserted that the deceased was guilty of contributory negligence and asserted that the operators of the T. & N. O. R. R. Company's switch engine failed to blow the whistle or ring the bell thereon and that such failure was the sole proximate cause of the collision. It was unable to persuade the jury to find according to its contentions upon either theory. While we must concede that there was evidence which raised the questions posed by the special issues submitted thereupon, it was either controverted or considerably short of proof which would render answers returned contrary to those desired fatal to the judgment rendered in the case.

The defendant's point of error No. 8 contends that the undisputed evidence showed that the deceased violated Company Rule 96, a part of which reads as follows: "96. Special care must be exercised at interlockers to avoid accidents due to towermen shifting points. Motor cars must not be operated over derails of interlocking plants without first communicating with towerman where that is possible. If unable to communicate with towerman, motor cars must be lifted over open derail and when derail is closed, men will detrain from car and shove car over derail. Motor cars must be stopped clear of the crossing and understanding had with towerman that no train is approaching before passing over the crossing."

It is defendant's further contention that since the deceased did in fact violate the Rule, and the jury found that he did, such constituted, as a matter of law, a proximate cause of the collision, if not the sole and only proximate cause, and the judgment must be reversed and the cause remanded.

 While the issue of sole proximate cause was in the case in relation to the defensive issues upon the matter of the negligence of the T. & N. O., we do not consider that it would have been proper to have submitted an issue upon the matter of whether the deceased's failure to obey Rule 96 was the sole proximate cause. This would not be any extraneous happening of force, as by an act of a third party, which played any part in the occurrence whereby the decedent's injuries were sustained and death resulted. International-Great Northern R. Co. v. Acker, Tex.Civ.App. Eastland, 1939, 128 S.W.2d 506, writ dismissed, judgment correct; Panhandle & Santa Fe Ry. Co. v. Ray, Tex.Civ.App. Austin, 1949, 221 S.W.2d 936, writ ref., n. r. e.; Sunset Motor Lines v. Blasingame, Tex.Civ.App. Dallas, 1951, 245 S.W.2d 288, writ dismissed. The matter of the rule violation on the part of the decedent could, of course, have amounted to contributory negligence. If he was contributorily negligent then the

matter of the amount or percentage by which it contributed to the resulting collision would be important. The jury found that plaintiff's decedent failed to observe Rule 96, but it refused to find for defendant that the failure was negligence under the circumstances of the case.

Since the case was brought under the Federal Employers' Liability Act, the decisions of the United States Supreme Court with respect to the rights and duties of the parties are controlling. We are impressed with the decision of Teets v. Chicago, South Shore & South Bend Railroad, 7 Cir., 1956, 238 F.2d 223, and are of the opinion that the question of whether an employee's violation of a company rule constitutes negligence on his part and a proximate cause of his injuries must be considered from the entire circumstances. When the surrounding circumstances could, in the minds of reasonable men, justify the act or omission which results in his injury, it is for the jury's determination whether it was negligence, and if so, whether such amounted to a proximate cause of his injuries.

The jury's refusal to find that plaintiff's decedent was negligent, under the circumstances attendant to the collision in question, was a valid and supported action on its part. That being true, the question of whether his failure to heed the provisions of the company rule was a proximate cause of the collision was of no importance and was of course not necessary to be answered.

The point of error is overruled.

Special Issue No. 33 reads as follows: "What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will fairly and reasonably compensate the surviving wife, Mrs. Beulah Wright, and the minor children, James H. Wright and Will E. Wright, for the pecuniary loss, if any, sustained by them as a direct and proximate result of the death of Roy Albert Wright, taking into consideration exclusively the following elements of damage, and none other:

"The reasonable present cash value of the loss, if any, of pecuniary benefits, if any, which would have accrued in reasonable probability to Mrs. Beulah Wright, James H. Wright and Will E. Wright, after November 22, 1953, from Roy Albert Wright.

"By 'pecuniary benefits', as used herein, is meant not only money but any services that can be valued as money. You cannot take into consideration, however, for any purpose, the grief, sorrow, or distress of mind, if any, experienced by the plaintiffs, the surviving wife and minor children, because of the death of the said Roy Albert Wright nor the loss to them of the companionship and society of the said Roy Albert Wright, but shall confine yourselves, exclusively, to the element of damage set forth above.

"In considering the pecuniary benefits, if any, of said minors, you cannot take into consideration or assess any damages beyond the respective minorities of said minors.

"You will answer by giving the amount, if any, of such damages, in dollars and cents, and you will then apportion such amount of damages as you may find between the surviving wife and minor children.

"We the Jury, answer:

"$———— which we apportion between plaintiffs, the surviving wife and minor children as follows:

"To Mrs. Beulah Wright $————
"To James H. Wright $————
"To Will E. Wright $————

"You are instructed that in answering the special issues on damages, you will not consider in your deliberations any of the testimony adduced in the trial of this case concerning any pension the surviving wife, Mrs. Beulah Wright, has received or will

receive in the future, for the reason that it cannot, under the law, be considered for any purpose in arriving at the amount of damages, if any, which you may find in answer to such Issues.

"In connection with the foregoing Special Issue, you are instructed that in determining the present value of such contributions, if any, as plaintiff would probably have received from the continued life of the deceased, you must take into consideration the highest rate of interest, compounded annually at which money can be safely and securely invested and determine the present value of any amount you may so allow by discounting the same or deducting therefrom annually an amount equal to the rate of interest during the period for which you allow such damages, if any, and make the balance, if any, your answer."

Certain objections were made to the issue, as submitted, not accompanied by any specially requested additional instruction or definition. However, at a proper stage of the proceedings the defendant Railroad did submit to the trial court a specially requested issue which was refused. The issue in question was defendant's specially requested "Special Issue No. 7," reading as follows:

"What sum of money if paid now in cash will fairly and reasonably compensate the plaintiff, Mrs. Beulah Wright, Administratrix of the Estate of Roy Albert Wright, deceased, for the loss of the future contributions which she during her lifetime and her sons during their minority would in reasonable probability have received from the deceased, Roy Albert Wright, had he lived?

"You are instructed in connection with the foregoing Special Issue that in determining the percent value of such future contributions, if any, you must discount the amount thereof at the highest rate of interest at which money can be safely and securely invested in this locality during the period for which you may allow such damages, if any, and make the balance, if any, your answer.

"Answer: $————."

Objections to the issue submitted were overruled. Such objections included the contention that as framed the issue permitted the jury to consider, as part of the pecuniary benefits, elements of damages which are not recoverable under the Federal Employers' Liability Act; contention that there was no evidence that any services which could be valued in money were rendered by the decedent to the beneficiaries; contention that there was no evidence that the deceased would have contributed to the minors after they had reached their majority. The objections and actions of the trial court thereupon are before us in point of error No. 9. Refusal to submit the specially requested issue is before us in point of error No. 17.

Relative to the objections, it is to be conceded that there was no evidence that the deceased would have contributed to the minors after they had reached their majority. This was well, for as is to be observed the issue submitted eliminated any such from matter which the jury could take into consideration in arriving at its answer. From the defendant Railroad's brief it is evident that it was of the opinion that the issue does not instruct the jury that it should not consider such a loss and therefore permits speculation upon it. But we are of the opinion that the jury was instructed specifically that it should neither speculate upon any such damages nor assess any.

 A wife, as well as minor children during their minority, may reasonably expect from the husband and father as head of the family pecuniary benefits over and

above the "take home" pay he might receive from his employer. The children ordinarily receive nurture, care and education. 33 Tex.Jur., p. 134, "Personal Injuries, etc.," sec. 90 (Damages) "Limited to Actual Damages." The wife may receive services, advice and counsel. Texas & P. Ry. Co. v. Riley, Tex.Civ.App. Texarkana, 1944, 183 S.W.2d 991, error refused, certiorari denied 325 U.S. 873, 65 S.Ct. 1414, 89 L.Ed. 1991; Page v. Scaramozi, Tex.Civ.App. San Antonio, 1956, 288 S.W.2d 909, writ ref., n. r. e. Such are "services" to the other members of the family measurable in money. And where the evidence demonstrates, as it does here, that at time of the fatal injuries to the husband and father he was occupying his place as such constituent member of the family, the normal and logical inference to be drawn therefrom is that in truth and in fact he is rendering such "services." These "services" are an element of damages which may be assessed by the jury in a F.E.L.A. case. Michigan Central Railroad Co. v. Vreeland, 1913, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417; Thomas v. Conemaugh Black Lick Railroad, D.C.W.D.Pa.1955, 133 F. Supp. 533, affirmed 3 Cir., 234 F.2d 429.

██ ██ The issue submitted, with instructions, was not subject to the objections taken. Therefore, defendant Railroad's point of error No. 9 is overruled. Point of error No. 17 is of course likewise overruled, for there would be no error in a refusal to submit in substitution of the issue which was properly submitted the specially requested issue desired in its stead.

The defendant Railroad's points of error Nos. 11, 12, 13, 14, 15 and 16 are all predicated upon refusals of the trial court to submit specially requested issues. The parties have briefed the points together. We will consider them together.

Defendant contends that there was sufficient evidence upon the several issues desired to require their submission. In brief the issues desired made inquiries as follows:

(1) Was the towerman at Eureka Crossing the agent, servant or employee of the T. & N. O. R. R. Company? (2) Did the towerman fail to warn the occupants of the motor car of the approach of the switch engine which was involved in the collision? (3) Was such failure on the part of the towerman the sole proximate cause of the collision? (4) Did the towerman permit the switch engine to approach and go upon the crossing? (5) Did the towerman fail to ascertain the whereabouts of the motor car as it approached the crossing? (6) Was such failure the sole proximate cause of the collision?

██ As to the issues we have numbered (4), (5) and (6), the plaintiff contends that the defendant Railroad had no pleadings upon which it would have been entitled to any submission of the questions posed. We agree with plaintiff. The defendant did plead that the towerman (an agent, servant, or employee of the T. & N. O. R. R. Company) failed to give the occupants of the motor car a warning of the switch engine's approach, that such failure was negligence—and whether negligence or not—was the sole proximate cause of the collision. However, though it additionally plead that it was the duty of the towerman to know the whereabouts of the engine as it approached and to control traffic at the crossing, it did not plead that the towerman either did or did not give any signals to the operators of the switch engine, either was or was not obliged to do so, nor did it plead that the towerman knew or should have known of the position of the motor car as the T. & N. O. R. R. switch engine approached the crossing.

██ ██ The defendant Railroad's pleadings did embrace allegations broad enough to encompass the subject matter of the issues we have numbered (1), (2) and (3). Referring to the evidence, however, it is noticed that the towerman at Eureka Crossing did not testify, nor did any other witness testify directly or indirectly in any respect sufficient to support any inquiry to be made of the jury about "whether or not

the towerman knew of the presence of the motor car in question." Of course it would be necessary either for this fact to stand proved and undisputed in the record or that evidence raise an issue submitted thereupon in order that there could be a foundation for the inquiry posed by defendant's specially requested issue number (2). Without such issue (2) would be subject to objection as constituting a charge upon the weight of the evidence in that it assumed the existence of a fact not proved since it was a matter upon which the defendant carried the burden. Johnson v. Zurich General Accident & Liability Ins. Co., 1947, 146 Tex. 232, 205 S.W.2d 353; Fort Worth & Denver Ry. Co. v. Barlow, Tex.Civ.App. Fort Worth, 1953, 263 S.W.2d 278, writ refused, n. r. e. The issue requested was properly rejected by the trial court for this reason. For a like reason, specially requested issue number (3) was properly rejected. Of course the specially requested issue number (1) was properly rejected since it would not operate as the submission of either all or part of any ultimate question to be resolved by the jury.

Points of error Nos. 22, 23 and 24 relate to the following: By No. 22 complaint is made because the trial court permitted plaintiff's attorney to ask her witness, L. J. Moon, leading questions over objection of the defendant, and in refusing to sustain a motion to strike the answers to the questions so propounded. By Nos. 23 and 24 complaint is made because the trial court overruled defendant's objections to the introduction in evidence, as from an adverse witness and under T. R. C. P. 182, certain portions of the depositions of the witnesses L. J. Moon and W. F. Zimmerman. Complaint further embraces the trial court's refusal to strike the answers returned to the questions propounded in the deposition.

In referring to the defendant Railroad's amended motion for new trial as well as to its brief, we fail to find set out therein any material leading question propounded to the witness while he was testifying from the stand, answer to which was permitted over objection of defendant's counsel. We do find instances where defendant's objections, on the ground that questions asked were leading, were sustained. Finding no support in the record for defendant's complaint in this respect, the point of error is overruled.

■ Considering points of error Nos. 23 and 24 it is noticed from the transcript that the defendant Railroad made a motion *in limine* in advance of the trial relative to certain questions in both witnesses' depositions. It desired that the trial court deny the plaintiff any leave to introduce the questions and answers defendant considered improper. In ruling upon the motion of the defendant the trial court denominated the pages of the respective original depositions upon which a question or answer appeared of which complaint was made, likewise denominating the lines on each page. This was done in respect to the questions and answers complained of as to which the trial court sustained the defendant's motion *in limine* and was likewise done in respect to those questions and answers which were permitted to be introduced over defendant's objection. In at least one respect the witnesses Moon and Zimmerman were charged by the plaintiff to have been the agents of the corporate defendant, or parties in control of the particular matters and things under investigation. Such was in connection with the matter of the lookout kept by them for and in behalf of the Railroad upon the occasion in question. We believe plaintiff had the right to interrogate the witnesses as adverse witnesses and under provisions of T. R. C. P. 182. The points of error are overruled.

Judgment is affirmed.