PORT TERMINAL RAILROAD
ASSOCIATION, Appellant,

v.

Oleta R. SWEET, Appellee.

No. 10–81–061–CV.

Court of Appeals of Texas,
Waco.

Aug. 26, 1982.

Rehearing Denied Oct. 7, 1982.

Gordon A. Holloway, Kyle M. Rowley and Claude R. Treece, Sewell & Riggs, Houston, for appellant.

Max Garrett, Tom R. Letbetter and George Payne, Garrett, Letbetter & Payne, Houston, for appellee.

## OPINION

CHASE, Justice.

Appellee, Oleta Sweet, brought this suit under the Federal Employer's Liability Act, (FELA) 45 U.S.C.A. § 51 et seq. (1908) for the wrongful death of her husband, Theodore Sweet, an employee of Appellant.

Sweet was riding on the lead car of a 14 car train being pushed along the track when the train made a lurch, alleged to be due to slack action, and Sweet was thrown forward onto the ground in front of the train and between the rails. Though a fellow employee shouted to him to remain between the rails and lie flat, he nevertheless sought to remove himself from the track and was crushed to death when the train passed over his body.

The case was tried to a jury which found: (1) A cushioning device on one of the cars was defective, and played a part in causing the accident; (2) both the Appellant and decedent were negligent; and (3) 75% of the negligence causing the accident was attributable to Appellant and 25% to the decedent. The jury awarded Appellee $579,287.00 for her pecuniary loss due to the death of her husband, and further awarded $25,000.00 for conscious pain and suffering and mental anguish suffered by the decedent prior to his death. The trial court entered judgment on the verdict for the full amount of both awards, declining to apply the 25% contributory negligence found against the decedent, thus making an implied finding that a safety statute had been violated by the railroad company.

Appellant brings this appeal asserting nine points of error, the first four of which essentially maintain the trial court erred in failing to reduce the award by the 25% contributory negligence found against the decedent, and in refusing to submit to the jury Appellant's requested special issue inquiring as to the knowledge of the railroad company concerning the defective cushioning device.

The Federal Employer's Liability Act 45 U.S.C.A. § 51 provides:

"Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part

from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances ... or other equipment."

Section 53 of said Act requires that damages be reduced in proportion to the employee's contributory negligence unless the accident resulted from the railroad violating a statute that was enacted for the safety of railroad employees.

Appellee asserts that Appellant violated § 2 of the Safety Appliance Act, 45 U.S. C.A. § 2, and reaches this conclusion by reasoning that the cushioning device is an integral part of the coupler.

Section 2 of the Safety Appliance Act provides:

"It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line ... any car ... not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

The purpose of this statute was to remedy the evils that attended the old-fashioned link and pin coupling which required railroad employees to go between the ends of cars to manually join and separate them, often resulting in accidents causing the loss of limbs or lives. *Johnson v. Southern Pacific Co.,* 196 U.S. 1, 25 S.Ct. 158, 49 L.Ed. 363.

■ To assure the safety of railroad employees, the courts interpret the Safety Appliance Act to cover the parts of a coupler which should work to attach the cars automatically. Mere proof that railroad cars fail to couple automatically will establish a violation of the Safety Appliance Act. *Cobb v. Union Railway Co.* 318 F.2d 33, cert. den'd. 375 U.S. 945, 84 S.Ct. 352, 11 L.Ed.2d 275.

■ In the instant case, there was no evidence that the cars failed to couple or uncouple automatically, only evidence showing a defective cushioning device.

■ The Federal Railroad Safety Act of 1970, 45 U.S.C.A. §§ 421–444 was enacted to promote safety in all areas of railroad operations and to reduce railroad related accidents, to reduce deaths and injuries to persons and to reduce damage to property caused by accidents involving any carrier of hazardous materials.

Section 431(a) of the Act authorizes the Secretary of Transportation to promulgate appropriate regulations for all areas of railroad safety, and further provided in § 437(d) that such regulations "shall have the same force and effect as a statute for purposes of application of sections 53 and 54 of this title, relating to the liability of common carriers by railroad for injuries to their employees."

■ Thus, any properly promulgated regulation issued pursuant to this authority could be relied upon to render immaterial Sweet's contributory negligence. *Federal Power Commission v. Louisiana Power & Light Co.,* 406 U.S. 621, 92 S.Ct. 1827, 32 L.Ed.2d 369.

Under the authority of the Federal Railroad Safety Act regulation 49 CFR 25.171 was promulgated and identified the broken components that create a defective coupling device as an inoperative shank, head, knuckle, pins, knuckle throwers, and locks. A defective cushioning device is distinctly absent from the category; yet, specifically defined in regulation in 49 CFR 25.197 which states that "a cushioning device is defective if it is broken, inoperative, or missing a part." The omission of the cushioning device from the coupler regulation and setting it forth specifically in the last quoted regulation manifests the Legislative intent to regulate the cushioning device as a distinct appliance, and not as a part of the coupler. The main purpose of a cushioning device is to protect the cargo being hauled in the railroad car rather than to insure and secure automatic coupling and thereby protect the safety of the employee.

■ A further regulation promulgated under the Federal Railroad Safety Act 45

U.S.C.A. § 431(a) and in effect on the date of the accident is "§ 215.7. Responsibility For Defective Cars. (a) Any railroad that knows, has notice, or should have known that a railroad freight car that it operates has any component which is described as defective in this part is responsible for compliance with this section."

A violation of the foregoing regulation would entitle the Appellee to come within the provisions of 45 U.S.C. § 53 (eliminating the contributory negligence). The jury did find the cushioning device to be defective, but there was no finding that the railroad knew, had notice or should have known of the defective condition.

Appellant contends the trial court erred in refusing to submit to the jury its requested special issue regarding notice or knowledge of the defect on the part of the Appellant at the time of the accident. However, the special issue was properly refused since there was no evidence that the railroad knew, had notice or should have known of the defective condition prior to the accident. On the other hand the car inspector found no defect immediately following the accident.

The Appellant having pled contributory negligence on the part of the plaintiff, it became the burden of the plaintiff to plead and prove a violation of an appropriate statute in order to be absolved of contributory negligence. This was not done. We hold that the trial court erred in not applying the general rule set forth in 45 U.S.C.A. § 53, thereby reducing the damages by the 25% contributory negligence found on the part of the decedent.

We sustain Appellant's first point of error to the effect that a cushioning device is not a part of the coupler. We further sustain Appellant's third and fourth points of error in which the court is charged with error in failing to reduce the jury's award of damages by 25%. The judgment must be reformed to comply with these findings.

In point of error five Appellant asserts the trial court erred in entering judgment based on the jury's answer to the special issue regarding Appellee's damages because the answer is not supported by evidence and is excessive.

Charles J. Sherfey, an actuary called as a witness by Appellant, reviewed Sweet's earning history, his income tax returns and the benefits he received as a railroad employee. Based on life expectancy, personal consumption, discount rates, etc. assumed by Appellant, Sherfey testified the economic loss Appellee suffered by reason of Sweet's death was $204,287.00. However, further assuming Sweet continued to work to age 70, which was his option (the testimony indicated that while it was unlikely Sweet would have worked that long, some men do indeed continue to work for the railroad until they are 70), and assuming Sweet was born in 1930, as was the testimony, the future economic loss would be $421,000.00. When added to the economic loss up to trial, the total lost earnings would be $441,000.00.

The evidence reflects Sweet was a strong, conscientious worker who was alert and agile and knew his job. His doctor testified Sweet was strong and active, and based on his health, Sweet could have been expected to live in excess of 70 years. Sherfey testified a healthy 40 year-old man could be expected to live another 35–40 years. (Sweet was 49 when he was killed.) Sweet's mother and father were still living and their respective ages were 68 and 70.

Other evidence showed Sweet helped his wife with the cooking and cleaning, painted the inside and outside of the house several times during their marriage, mowed and kept up the yard and worked in his garden, kept the car in good condition and washed, and helped a young man who was doing some major work on the house. Also, Sweet never left his wife alone at night, and he would sit up with her if there was a storm because she was afraid of storms. They had been married for 30 years and had three grown children. Mrs. Sweet was fifty at the time of trial, approximately fifteen months after Sweet's death.

■ Damages in an FELA action are limited to pecuniary losses, those which can

be measured by some standard, and this can include loss for a husband's services. *Michigan Central Railroad Co. v. Vreeland,* 227 U.S. 59, 33 S.Ct. 192, 196, 57 L.Ed. 417 (1912). *Missouri-Kansas-Texas Railroad Co. v. Wright,* 311 S.W.2d 440, 449 (Tex.Civ. App.—Fort Worth 1958, writ dism'd by agreement of parties). The jury was not limited to a mathematical formula in fixing the pecuniary value of the loss of Sweet's services to his wife; rather, the value of services based on the evidence could be estimated. *Missouri-Kansas-Texas Railroad Co. v. Pierce,* 519 S.W.2d 157, 160 (Tex.Civ. App.—Austin 1975, writ ref'd n.r.e.).

■ When lost earnings are subtracted from the total amount of pecuniary loss, ($579,287.00 minus $441,000.00), a balance of $138,287.00 remains. Assuming Sweet had lived another 25 years to age 74, this would make the value of his services to his wife about $5,530.00 per year. In light of the evidence, we cannot say the amount is excessive. Point five is overruled.

Points of error six, seven, and eight contend the court erred in submitting a special issue regarding Sweet's physical pain and mental anguish before his death and in entering a judgment based on the jury's answer to that issue. Appellant asserts there was no evidence to warrant submission on the issue and the amount was excessive.

Appellee relies on a case decided under Tex.Rev.Civ.Stat.Ann. art. 4671 (Supp.1982) and art. 5525 (1958). In *Bedgood v. Madalin,* 589 S.W.2d 797, 805–808 (Tex.Civ.App. —Corpus Christi, 1979) affirmed in part and reversed and remanded in part at 600 S.W.2d 773, 787 (Tex.1980), the Court of Civil Appeals determined that $25,000.00 was not an excessive award for pain and suffering under similar circumstances of the instant case. We do not consider the case controlling here because federal law governs substantive rights of parties in FELA actions. *Scott v. Atchison, T. & S. Ry. Co.,* 572 S.W.2d 273, 281 (Tex.1978).

■ The Federal Employer's Liability Act, 45 U.S.C.A. § 59, (1908) enables a representative to recover for the deceased's pain and suffering once three essential elements are proven: survival, consciousness, and pain. *St. Louis, Iron Mountain, & Southern Railway Co. v. Craft,* 237 U.S. 648, 35 S.Ct. 704, 59 L.Ed. 1160 (1914). *Great Northern Railway Co. v. Capital Trust Co.,* 242 U.S. 144, 37 S.Ct. 41, 61 L.Ed. 208 (1916). In *Craft,* the United States Supreme Court distinguished between the conscious pain and suffering, which the decedent endured for thirty minutes before his death, from the sufferings which are substantially contemporaneous with death. The latter, which the court described as "short periods of insensibilities that sometimes intervene between fatal injuries and death," afford no basis for recovery. This distinction between consciousness and insensibility of pain was clarified in Capital Trust where a railroad employee was run over by a train and rendered wholly unconscious. Although he continued to breath ten minutes before his death, the court denied the pain and suffering award because there was no evidence of consciousness.

■ In the instant case, the evidence shows that slack action threw Sweet six to ten feet from a railroad car to the tracks. Although the evidence shows Sweet was conscious after he fell, it does not indicate he was physically injured. Instead of lying flat between the tracks, Sweet struggled to get to his feet to avoid the train. Within seconds, its wheels drove across his midsection. Tony Bernal, a railroad switchman, testified that Sweet seemed to have raised his head and arms after he was struck. When asked if Sweet was conscious after the wheels ran over him, Bernal could only testify that Sweet "had some life in him at the time," but he did not answer Sweet was conscious. The engineer, Ferguson, who saw Sweet three minutes or less after the occurrence testified the only sign of life he saw from Sweet was a "half breath." When asked if Sweet appeared unconscious, Ferguson answered yes.

■ Consciousness is an essential part of suffering. There can be no suffering without consciousness. The record reveals

sufficient evidence for the jury to infer Sweet was conscious before the train struck him; yet there was no more than a scintilla of evidence to infer he was conscious after the initial impact of the train.

The jury could reasonably infer that Sweet suffered mental anguish caused by a terrifying realization that the train might hit him. The court in *Kozar v. Chesapeake and Ohio Railway Co.,* 320 F.Supp. 335, 365 (W.D.Mich.1970), affirmed in part, vacated in part, and remanded in part at 449 F.2d 1238, 1244 (6th Cir.1971), acknowledged mental agony and emotional fright as compensable injuries under the FELA. In *Kozar,* the foreman of a wrecking crew was instantly killed in an attempt to rerail a refrigerator car. The car, which was suspended over the tracks, began to fall while Kozar was underneath it. A co-worker yelled for Kozar to look out. Believing he was in peril, Kozar began to run a few steps; but, was crushed to death. The court held that Kozar could recover for his pre-impact fright.

We reform the trial court's judgment by reducing the total award by 25%, the amount of contributory negligence on the part of the decedent.

In view of the state of the record concerning Sweet's conscious pain and suffering, the award of $25,000.00 was clearly excessive by $15,000.00. Appellee is given 10 days in which to file remittitur in that amount. Rule 440 Texas Rules of Civil Procedure. *Flanigan v. Carswell,* 324 S.W.2d 835.

If said remittitur is filed within such time the judgment of the trial court will be reformed and affirmed. Otherwise the judgment of the trial court will be reversed and the cause remanded for retrial.

HALL, Justice, dissenting.

I do not agree with the majority's view that the jury's award of $25,000.00 for conscious pain and suffering was excessive by $15,000.00 under the facts of this case, and I dissent from that ruling. In all other respects I concur with the majority opinion.