Oleta R. SWEET, Petitioner,

v.

PORT TERMINAL RAILROAD ASSOCIATION, Respondent.

No. C–1703.

Supreme Court of Texas.

July 6, 1983.

Garrett, Letbetter & Payne, Tom R. Letbetter, Max Garrett and George Payne, Houston, for petitioner.

Sewell & Riggs, Gordon A. Holloway, Kyle M. Rowley and Claude R. Treece, Houston, for respondent.

BARROW, Justice.

The petitioner, Oleta R. Sweet, brought this action under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (1976), against Port Terminal Railroad Association (Port Terminal) for the wrongful death of her husband, Ted Sweet. The trial court awarded Mrs. Sweet the full amount of damages found by the jury. The court of appeals reformed the award for pecuniary loss by decreasing Mrs. Sweet's recovery by the percentage of negligence attributed to the deceased and ordered a remittitur on the award for pain, suffering and mental anguish. 640 S.W.2d 362. We affirm the judgment of the court of appeals.

On October 24, 1979, Sweet was thrown from the lead car of a fourteen car train being pushed along the track when the car made a jerking, whip-like motion. Sweet fell in front of the train and was crushed to death when the car passed over his body. This whip-like motion is commonly referred to as "slack action" in the railroad industry and was initiated by the application of the engine's independent brake system. Evidence was introduced at trial which showed that the slack action was unusually forceful on this occasion because of a defective cushioning device on the car next to the one Sweet was riding.

In response to special issues, the jury found: (1) the cushioning device on the second car was defective at the time of the accident, (2) the defective cushioning device played a part in causing the accident, (3) both Port Terminal and Sweet were negligent, and (4) 75 percent of the negligence causing the accident was attributable to Port Terminal and 25 percent was attributable to Sweet's own negligence. The jury awarded Mrs. Sweet $579,287 for pecuniary losses and $25,000 for her husband's conscious pain and suffering and mental anguish. Based on the jury's verdict, the trial court rendered judgment that Mrs. Sweet recover the full amount of damages awarded. By not reducing Mrs. Sweet's recovery, the trial court impliedly held that Port Terminal violated a railroad safety statute by operating a railroad car with a defective

cushioning device which contributed to Sweet's death.

Under the FELA, every "common carrier by railroad" is liable for injuries sustained by its employees resulting from or due to its negligence. 45 U.S.C. § 51 (1976). The FELA also establishes a system of comparative negligence whereby an employee's recovery of damages will be decreased "in proportion to the amount of negligence attributable to such employee ...." 45 U.S.C. § 53 (1976). The railroad, however, is precluded from asserting an employee's contributory negligence in "any case where the violation by [a] common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." *Id.*

The court of appeals held that Mrs. Sweet had not established a violation of a safety statute because she failed to prove that Port Terminal knew or should have known of the defect prior to the accident. Our principal question is whether the 1979 Federal Railroad Administration regulations governing cushioning devices may be violated without proof of scienter of the defect by the railroad. We hold that the regulations do not impose liability without scienter and, therefore, the general comparative negligence provisions apply.

■ Mrs. Sweet asserts that the comparative negligence provisions do not apply because a cushioning device is part of a railroad car's coupling equipment which is controlled by the Safety Appliance Act. *See* 45 U.S.C. § 2 (1976). When equipment fails to perform as required by the Safety Appliance Act and that failure contributes to an employee's injuries, absolute liability is imposed on the railroad. *Missouri-Kansas-Texas R. Co. v. Evans,* 151 Tex. 340, 250 S.W.2d 385, 388 (1952). Liability under the act can be shown by the failure of the cars to couple automatically upon impact, to uncouple without the need to step between the cars or to remain coupled until released. *O'Donnell v. Elgin, J. & E. Ry. Co.,* 338 U.S. 384, 388, 390, 70 S.Ct. 200, 203, 204, 94 L.Ed. 187 (1949). In this case, however, there is no proof that the cars failed to couple or

uncouple in violation of the requirements set out in the act. Furthermore, cushioning devices are not regulated under authority of the Safety Appliance Act. Cushioning devices are defined and controlled by the Railroad Freight Car Safety Standards. *See* 49 C.F.R. §§ 215.5(e) and 215.197 (1979). These regulations were promulgated pursuant to authority granted the Department of Transportation [1] by sections 202 and 209 of the Federal Railroad Safety Act of 1970.[2] Therefore, Port Terminal's liability must be measured by the standards set out in the Freight Car Safety Standards and the Federal Railroad Safety Act.

Unlike the Safety Appliance Act which was enacted to resolve specific safety problems, the Federal Railroad Safety Act is a comprehensive statute dealing with "safety in all areas of railroad operations." [3] Section 437(c) of the Federal Railroad Safety Act provides that the rules and regulations issued in the Freight Car Safety Standards "shall have the same force and effect as a statute for purposes of the application of sections 53 and 54 of this title [FELA], relating to the liability of common carriers by railroad for injuries to their employees." 45 U.S.C. § 437(c) (Supp. III 1979). Therefore, proof of a violation of these regulations would be sufficient to preclude Port Terminal from asserting contributory negligence and to allow Mrs. Sweet to recover her entire award of $579,287 for pecuniary loss.

This accident occurred in 1979 *prior* to the 1980 revisions to the railroad safety regulations which clearly sought to impose liability on the railroad without requiring proof of scienter of the defect. Mrs. Sweet, therefore, must prove all the elements of the Freight Car Safety Standards as they were written in 1979 to recover the entire award for pecuniary loss. Section 215.7

sets out a railroad's "responsibility for defective cars" and provides:

> Any railroad that *knows, has notice, or should have known* that a railroad freight car that it operates has any component which is described as defective in this part is responsible for compliance with this section ... [E]ach railroad freight car which has a component described as defective in this part must be—
>   (1) repaired; or
>   (2) removed from service. (emphasis added). 49 C.F.R. § 215.7 (1979).

This section requires a claimant to prove not only that the cushioning device was defective but that the railroad knew or should have known of the defect. The jury found the cushioning device on the second car to be defective as defined in section 215.197 of the 1979 regulations, but no issues were submitted on whether Port Terminal knew or should have known the equipment to be defective.

Prior to the 1980 amendment, the Federal Railroad Administration, which is responsible for issuing and enforcing railroad regulations, construed the Freight Car Safety Standards to impose liability only after it had been shown that the railroad "knew or should have known" of the defect. *See Fort Worth and Denver Ry. Co. v. Lewis,* 693 F.2d 432, 433, 439 (5th Cir.1982); *see also Fort Worth and Denver Ry. Co. v. Goldschmidt,* 518 F.Supp. 121, 131 (N.D.Tex. 1981), *rev'd on other grounds,* 693 F.2d 432 (5th Cir.1982). In 1978, the Federal Railroad Administration began a series of public hearings concerning proposed amendments to regulations dealing with railroad safety. *See* 43 Fed.Reg. 26337 (1978). One such proposal suggested combining several provisions in the Safety Appliance Standards [4] with the Freight Car Safety Standards. The agency noted that under this proposal, " '[k]nowledge' of defective condi-

---

1. The Secretary of Transportation has delegated the majority of his rule-making power under the Federal Railroad Safety Act to the administrator of the Federal Railroad Administration. 49 C.F.R. § 1.49(n) (1979).

2. Pub.L. No. 91–458, §§ 202 and 209, 84 Stat. 971 and 975 (1970), (codified at 45 U.S.C.

§§ 431 and 438 (1976)); *see* 38 Fed.Reg. 32224 (1979).

3. 1970 U.S.Code Cong. & Admin.News 4104, 4106.

4. 49 C.F.R. Part 231 (1979).

tions would no longer be necessary for railroads to violate the Freight Car Safety Standards" if the changes contemplated in Part 215 were adopted. 43 Fed.Reg. 26337, 26338 (1978).

The 1980 revisions to section 215.7 expressly permitted "the assessment of fines for failure to comply with the revised standards with respect to any car which is 'in service.'" 44 Fed.Reg. 1419, 1422 (1979). The Federal Railroad Administration noted that the "current regulation [49 C.F.R. Part 215 (1979)] creates civil penalty liability only where it is shown that the railroad knows or should know of a defect," whereas "the proposed [1980] rule would establish absolute liability similar to that which exists now under the Safety Appliance Act ...." *Id.* at 1422–1423. The final comments made by the Federal Railroad Administration dealing with the 1980 regulations concluded:

> "[B]asing a violation on knowledge of the defective condition encourages ignorance and neglect. It is FRA's experience that *the knowledge requirement (§ 215.7) of the current standards* has had that effect. Thus, it has been necessary to adopt a rule of strict liability for violations of revised standards." (emphasis added). 44 Fed.Reg. 77328, 77339 (1979).

■ This treatment by the Federal Railroad Administration indicates that scienter was necessary under the 1979 Freight Car Safety Standards before a violation could be shown. Since the regulations require scienter, there is no need for us to examine the provisions of the Federal Railroad Safety Act to determine if strict liability is authorized by Congress. *See Fort Worth and Denver Ry. Co. v. Lewis,* 693 F.2d 432 (5th Cir.1982).

Mrs. Sweet also urges that section 215.-19 [5] creates a standard of liability different from that set out in section 215.7. Specifically, Mrs. Sweet urges that liability under section 215.7 controls only where a railroad refuses to repair or remove a car after it becomes aware of the defect, but that scienter of the defect is not necessary for the railroad to violate the provisions in the remainder of the regulations under section 215.19. None of the comments published by the Federal Railroad Administration have ever alluded to the application of two different standards. The provisions in section 215.19 do no more than state the minimum and maximum civil penalties allowable for a violation identified in section 215.7.[6] Therefore, we hold that the standard of liability in section 215.7 controls all the provisions in part 215 of the 1979 regulations.

■ Since Sweet's death occurred while the 1979 regulations were in effect, Mrs. Sweet had the burden of showing that Port Terminal knew or should have known of the defective cushioning device. There being no findings that Port Terminal knew or should have known of the defect, we hold that Mrs. Sweet has failed to show that Port Terminal violated a safety statute. Therefore, the court of appeals correctly reduced the recovery for pecuniary loss by the 25 percent contributory negligence attributable to Sweet as required by the general comparative negligence provisions of the FELA.[7]

■ Mrs. Sweet also questions the authority of the court of appeals to disturb a jury's award of damages by ordering a remittitur in a FELA case. This contention has been raised before and was expressly overruled in *Missouri Pacific R. Co. v. Kimbrell,* 160 Tex. 542, 334 S.W.2d 283, 287 (1960), and *Gulf Colorado & Sante Fe Ry. Co. v. Deen,* 159 Tex. 238, 317 S.W.2d 913, 914 (1958), *cert. denied,* 359 U.S. 945, 79 S.Ct. 725, 3 L.Ed.2d 678 (1959). We, there-

---

5. 49 C.F.R. § 215.19 provides:

   Any railroad that operates a railroad freight car in violation of any requirement prescribed in this part is liable to a civil penalty of at least $250 but not more than $2,500 for each violation. Each day of each violation constitutes a separate offense.

6. Section 215.19 was revoked in the 1980 revision because a schedule of fines and penalties was included in Appendix B and the retention of the section was thought to be redundant. *See* 44 Fed.Reg. 1419, 1423 (1979).

7. 45 U.S.C. §§ 51 and 53 (1976).

fore, hold that the court of appeals has the power to order a remittitur in FELA actions. Since the granting of a remittitur and questions as to the excessiveness of damages are questions of fact made final in the court of appeals, we lack jurisdiction to review that holding. *Impson v. Structural Metals, Inc.*, 487 S.W.2d 694, 697 (Tex.1972); *Pon Lip Chew v. Gilliland*, 398 S.W.2d 98, 103 (Tex.1965).

The judgment of the court of appeals is affirmed.