**MISSOURI PACIFIC RAILROAD COMPANY, Appellant,**

v.

**Marshall LANE, and Wife, Layvonne Lane, and the Estate of Marvin Ray Lane, Appellees.**

**No. 9447.**

Court of Appeals of Texas, Texarkana.

Oct. 21, 1986.

Rehearing Denied Nov. 18, 1986.

Claude R. Treece, Sewell & Riggs, Houston, for appellant.

Jim Ammerman, II, Marshall, for appellees.

CORNELIUS, Chief Justice.

Missouri Pacific Railroad Company appeals a judgment awarding appellees $373,-046.39 for the wrongful death of Marvin Lane. Lane was killed when his pickup truck was struck by a Missouri Pacific freight train. The jury found that the crossing where the accident occurred was extra-hazardous, and it found Missouri Pacific negligent in failing to have an automatic signal, crossing gate or flagman at the crossing, and in failing to promptly and properly apply the train brakes before the collision. The jury found that Lane was contributorily negligent in failing to keep a proper lookout, but failed to find that his failure was a proximate cause of the accident. The jury also refused to find Lane negligent in failing to get out of the truck after he saw the train. On appeal, Missouri Pacific challenges the sufficiency of the evidence to support the adverse findings of negligence and damages, and contends that the failure to find negligence and proximate cause against Lane is against the great weight and preponderance of the evidence. We affirm.

On April 19, 1982, Marvin Ray Lane was driving to work on the Muntz-Cutoff Road near Hallsville, along with passengers Kenneth Davidson and Ernest Williams. While driving south, Lane came to the railroad crossing, which had an obstructed view of the track because of the presence of weeds, grass and an embankment. Lane stopped the truck about fifteen feet from the track and looked in both directions. He then proceeded up on the tracks, at which point the pickup stalled. He tried unsuccessfully to restart the truck. As passenger Williams looked to his left and saw the train approaching, he said, "We need to get out," and he and Davidson started to get out. Lane stayed in the truck momentarily and attempted to restart it, then opened the door as if attempting to leave, and then

closed it again. Williams was able to escape, but Lane and Davidson were killed when the train struck the vehicle.

The evidence conflicted sharply as to how long the truck was on the tracks before being struck, and how far the train was from the crossing when Lane and the others could see it. Williams estimated they were stalled on the tracks thirty to forty seconds before the collision, but he insisted that his estimate was just a guess and said that he was not good at estimating times. On the other hand, the train crew witnesses testified that as they were approaching the crossing they saw the truck first drive up on the tracks, then roll back a foot or two, and then stall. They said they did not apply the brakes immediately upon seeing the truck stop on the tracks, but did apply them when they realized the truck was not going to get off. Viewing the evidence in the light most favorable to the verdict, it can support a conclusion that the time available for Lane and his companions to get out of the truck and off the tracks after they could have seen the train was approximately six to eight seconds.

■ Missouri Pacific contends there is legally and factually insufficient evidence to support the jury's finding that the failure to have an automatic signal, flagman or gate at the crossing was a proximate cause of the accident. Specifically, it argues that because such safeguards would not have been activated until after the truck was already on the tracks, they would not have afforded Lane any protection. We disagree. The argument is based upon an assumption that the truck was on the tracks for thirty or more seconds before the impact. As noted earlier, however, the train crew testified otherwise. Viewing all the evidence in the light most favorable to the verdict, and especially considering the train crew's testimony, there is sufficient evidence to justify the jury in believing that the train was so near the crossing when the truck went upon the tracks that the presence of an automatic signal, crossing gate or flagman would

have prevented Lane from attempting to pass the crossing.

Missouri Pacific also contends there is legally and factually insufficient evidence to support the jury's finding that the train crew was negligent in the application of the brakes, and that such negligence was a proximate cause of the collision. The evidence at trial on this issue was also sharply conflicting. The crew members testified that the brakes were not applied when they first saw the truck stopped on the crossing because they believed that the truck would move and they did not want to apply the brakes unnecessarily. They testified that as soon as they realized the truck was not going to leave the crossing the emergency brakes were applied. According to their estimate this occurred at about 600 feet from the crossing. The speed tape from the train (a device that measures brake application, train speed and throttle position) indicated that the train was at full throttle and that no brakes were applied until after the collision. Also, an individual who had worked around trains for many years and who was near the accident testified that he never heard the sound of emergency brakes being applied until after the collision. Viewing the testimony in the light most favorable to the verdict, there is sufficient evidence from which the jury could have concluded that either the brakes were not applied until after the impact, or that if they were applied they were not applied as quickly as they should have been in view of the train crew's knowledge that the pickup was stopped on the crossing. Missouri Pacific counters with the argument that an earlier application of the brakes would not have "significantly" slowed the train before the collision. We disagree. There were sufficient facts and inferences to justify a conclusion that an earlier application of the brakes would have given at least some extra time, however short, for Lane and his companions to try to extricate themselves from the truck. *See Ford v. Panhandle & Santa Fe Ry. Co.*, 151 Tex. 538, 252 S.W.2d 561 (1952); *Southern Pacific Company v. Stanley*, 473 S.W.2d 52 (Tex.Civ.App.-Corpus Christi 1971, writ ref'd n.r.e.); *see also, Fisher v. Walters*, 428 So.2d 431 (La.1983).

Missouri Pacific next argues that there is insufficient evidence to support the jury's award of $327,000.00 to Lane's parents for past and future lost companionship and for past and future mental anguish. Specifically, it argues that since the pecuniary damages awarded were only $3,500.00, the award of $327,000.00 for loss of companionship and mental anguish is necessarily excessive. We cannot agree. One of the reasons Texas now allows a recovery for termination of the parent-child relationship and the resulting mental anguish is that payment for pecuniary loss alone was inadequate to compensate the parents. *See Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985); *Sanchez v. Schindler*, 651 S.W.2d 249 (Tex.1983). We decline to adopt a rule that damages for loss of companionship and for mental anguish must be reasonably proportional to the damages for pecuniary loss. The record reflects that the Lanes were a close family and that Marvin Lane's death was especially difficult on his parents. We find sufficient evidence to support the jury's findings, and we find that the damages awarded are not excessive.

Missouri Pacific further contends that there is no evidence or insufficient evidence to support the jury's awarding $19,500.00 to Lane's estate for physical pain and mental anguish suffered before his death. The argument is based upon the fact that Lane was apparently killed instantly. Such an argument fails to consider the terror and consequent mental anguish Lane suffered for the six to eight seconds while he faced imminent death. We find the jury verdict in this respect based upon sufficient evidence.

Missouri Pacific also contends that the jury's failure to find that Lane's failure to keep a proper lookout was a proximate cause of the accident, and that his failure to exit the truck after he saw the train was not negligent, was against

the great weight and preponderance of the evidence. The jury's failure to find a fact upon which the complaining party has the burden of proof need not be supported by affirmative evidence. However, when it is urged, as in this case, that the jury's failure to find a fact is so against the great weight and preponderance of the evidence as to be manifestly wrong the fact finding power of the Court of Appeals is invoked, and we are required to weigh all of the evidence and determine if the complained-of finding is against the great weight and preponderance of the evidence. *Traylor v. Goulding*, 497 S.W.2d 944 (Tex.1973).

We conclude that the jury's failure to find these facts is not against the great weight and preponderance of the evidence. One confronted with a sudden emergency without sufficient time to determine with certainty the best course of action is not held to the same accuracy of judgment as he would be if he had time for cool deliberation. *Herndon v. Halliburton Oil Well Cementing Co.*, 154 S.W.2d 163 (Tex.Civ.App.-El Paso 1941, writ ref'd w.o. m.). Lane was confronted with a 2,000 ton train speeding toward him at sixty miles per hour. From the evidence the jury could have concluded that he had only six to eight seconds to react to the situation. Although there was evidence that Lane started to get out of the truck but then got back into it before the collision, it was also shown that to exit the truck and escape danger he would have to walk or run on the track toward the oncoming train. The jury could thus reasonably conclude that, facing these emergency situations, Lane's conduct under the circumstances was not negligent.

The jury found that Lane was negligent in failing to keep a proper lookout, but failed to find that his negligence was a proximate cause of the collision. Missouri Pacific argues that his failure to keep a proper lookout must have been a proximate cause of his death, because if he had looked sooner he would have had time to exit the truck before the train reached the crossing. As noted earlier, however, there was evi-

dence from which the jury could have concluded that only some six to eight seconds elapsed from the time the truck pulled up on the crossing until the collision occurred, and the jury could reasonably have concluded that Lane, acting as a reasonable, prudent man in a similar emergency situation, would not have had time to escape from the pickup even if he had seen the train sooner than he did. A railroad expert witness testified that according to a test he had performed a person should be able to exit a similar pickup truck in about three seconds, but he conceded that his test did not take into consideration the average reaction time of three-fourths of a second or the emergency nature of Lane's predicament. From the entire record before us, we cannot conclude that the jury's failure to find proximate cause was so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

By cross-point Lane asserts that the trial court should have submitted a separate damage issue allowing recovery for loss of enjoyment of life. Loss of enjoyment of life may not be claimed as a separate element of damages, but may be treated as a factor in determining the damages in general or those for pain and suffering. *Locke v. International & G.N.R. Co.*, 25 Tex.Civ.App. 145, 60 S.W. 314 (1901); 34 A.L.R.4th 293 (1984); *see also, Missouri Pacific Railway Company v. Handley*, 341 S.W.2d 203 (Tex.Civ.App.-San Antonio 1960, no writ).

For the reasons stated, the judgment of the trial court is affirmed.

GRANT, J., not participating.