# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00512-CV

**Appellant, Union Pacific Railroad Company// Cross-Appellants, Dan V. Legg, Jr. and Suzanne Legg, Individually, as the Surviving Parents of Ryan Dustin Legg, Deceased, and as Independent Administrators of the Estate of Ryan Dustin Legg**

**v.**

**Appellees, Dan V. Legg, Jr. and Suzanne Legg, Individually, as the Surviving Parents of Ryan Dustin Legg, Deceased, and as Independent Administrators of the Estate of Ryan Dustin Legg// Cross-Appellee, Union Pacific Railroad Company**

## FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT NO. 26,954, HONORABLE ED MAGRE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This case involves a collision at a railroad crossing between a train operated by Union Pacific Railroad Company and a truck driven by Ryan Dustin Legg ("Dustin"). Dustin died in the collision. Dustin's parents, Dan V. Legg, Jr. and Suzanne Legg (the "Leggs"), sued Union Pacific for negligence. A jury trial was held, and the district court entered judgment based on the jury verdict. Both sides appeal. Union Pacific asserts that the evidence is legally insufficient to support the award of damages for Dustin's conscious pain and mental anguish. The Leggs assert that the evidence is factually insufficient to support the award of no damages for their mental anguish and loss of companionship, and that the district court's refusal to strike certain venire members for cause was reversible error. We affirm the judgment of the district court.

## Factual and Procedural Background

On November 21, 1999, at 1:43 p.m., nineteen-year-old Dustin Legg, driving a pick-up truck, entered a railroad crossing in Rockdale, Texas, and was struck by a Union Pacific train on the front passenger side of his truck. The impact knocked the truck off the railroad tracks and ejected Dustin from his truck. He was pronounced dead at 2:30 p.m.

The Leggs sued Union Pacific, alleging that the warning lights and crossing gates at the intersection were inadequately maintained by Union Pacific and failed to timely warn Dustin of the oncoming train. The jury determined that the negligence of both Union Pacific and Dustin proximately caused the collision, assigned percentages of responsibility of 51 percent to Union Pacific and 49 percent to Dustin, and set $1,000,000 as the sum of money that would fairly and reasonably compensate Dustin for his pain and mental anguish. However, the jury awarded no damages to the Leggs for their past and future mental anguish or their past and future loss of companionship and society. The district court entered judgment on the jury verdict, awarding $510,000 to the Leggs, plus pre- and post-judgment interest and court costs. On appeal, Union Pacific challenges the district court's award of damages for Dustin's pain and mental anguish, and the Leggs challenge the district court's failure to award any damages for their mental anguish and loss of companionship, as well as the court's refusal to strike certain venire members for cause.

## Union Pacific's Appeal

Union Pacific contends that there is legally insufficient evidence to support the district court's award of damages for Dustin's pain and mental anguish. For a legal sufficiency challenge, we review the evidence in the light favorable to the verdict, crediting favorable evidence

2

if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). A legal sufficiency point may be sustained if the record reveals (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *See id.* at 810. More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

Under Texas law, only pain and suffering that is consciously experienced is compensable. *Casas v. Paradez*, 267 S.W.3d 170, 185 (Tex. App.—San Antonio 2008, pet. denied) (op. on reh'g); *Southern Pac. Transp. Co. v. Luna*, 730 S.W.2d 36, 38 (Tex. App.—Corpus Christi 1987, no writ). Union Pacific contends there is legally insufficient evidence that Dustin experienced conscious pain or mental anguish.

There was a substantial amount of evidence at trial indicating that Dustin was not conscious after the accident. After the train had stopped, the Union Pacific fireman on the train ran back to Dustin and found no pulse. The first police officer on the scene testified to seeing no signs of life. According to the medical records, at 1:47 p.m. the paramedics found no blood pressure, pulse, or respiration, and Dustin's cause of death was identified as "massive head trauma." The only evidence to the contrary came from Sharee Mitchell, who testified that she witnessed the accident, turned her car around back toward her home, on the way home asked a deacon standing in the front yard of a church to call 9-1-1, arrived home and attempted to reach Dustin's family by telephone,

3

and then returned to the scene of the accident where she watched the paramedics' attempts to revive Dustin. Following her arrival at the scene, she testified, Dustin was "shaking" and "moaning." Union Pacific asserts that Mitchell's testimony is legally insufficient evidence of consciousness, based on case law holding that moans and groans, by themselves, are not evidence of consciousness. *See Carlisle v. Duncan*, 461 S.W.2d 254, 256-57 (Tex. Civ. App.—Dallas 1970, no writ); *Canales v. Bank of Cal.*, 316 S.W.2d 314, 319 (Tex. Civ. App.—Eastland 1958, writ ref'd n.r.e.).

We need not consider whether Dustin was conscious after the accident, however, because there is legally sufficient evidence that he experienced mental anguish *prior* to the accident. *See Jenkins v. Hennigan*, 298 S.W.2d 905, 911 (Tex. Civ. App.—Beaumont 1957, writ ref'd n.r.e.) ("Consciousness of approaching death is a proper element to be considered in evaluating mental suffering."). There was evidence at trial that the warning lights at the intersection were not properly aligned and that the crossing gates had descended late in some instances. Mitchell testified that the gate came down onto Dustin's truck as he entered the crossing. The Leggs' accident reconstruction expert testified that the gate was within a few inches of being completely down when it struck Dustin's front windshield, and that less than two seconds passed between the truck striking the gate and the train striking the truck.[1] This is some evidence that Dustin was not alerted to the oncoming train prior to his arrival at the crossing. Also, there was a skid mark at the intersection that began just prior to the crossing gate and that matched Dustin's truck's front tire, and the accident reconstruction expert testified that Dustin was traveling between sixteen and twenty miles per hour

---

[1] According to the Leggs' expert's testimony, federal law requires a minimum of five seconds between the gate's completing its descent and the train's entering the intersection. *See* 49 C.F.R. § 234.223 (2008).

when he struck the crossing gate, but only two miles per hour when the train, traveling 49 miles per hour, struck the front passenger side of the truck. This is some evidence that there was a period of time in which Dustin was aware of the oncoming train and the dangerousness of the situation.

Consciousness of approaching death may be established by circumstantial evidence. *See Green v. Hale*, 590 S.W.2d 231, 237-38 (Tex. Civ. App.—Tyler 1979, no writ). We conclude that there is legally sufficient evidence to support a jury finding that Dustin consciously experienced mental anguish in the moments prior to the train's colliding with his truck.[2] *See Missouri Pac. R.R. Co. v. Lane*, 720 S.W.2d 830, 833 (Tex. App.—Texarkana 1986, no writ) (affirming damages award where train struck pickup truck stalled on tracks, based on "terror and consequent mental anguish [decedent] suffered for the six to eight seconds while he faced imminent death"); *Port Terminal R.R. Ass'n v. Sweet*, 640 S.W.2d 362, 367 (Tex. App.—Waco 1982) ("The jury could reasonably infer that [decedent] suffered mental anguish caused by a terrifying realization that the train might hit him."), *aff'd*, 653 S.W.2d 291 (Tex. 1983).

**The Leggs' Appeal**

In their first point on appeal, the Leggs assert that the evidence is factually insufficient to support the district court's failure to award damages for their mental anguish and loss of companionship. For a factual sufficiency challenge, we must consider and weigh all the evidence in the record, both supporting and against the finding, to decide whether the verdict should be set aside. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We will set aside the judgment

_____

[2] Union Pacific does not challenge the factual sufficiency of the damages award.

5

only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.*; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

Both Dan and Suzanne Legg testified at length regarding their grief from the death of their son. Suzanne testified that she had difficulty focusing, doing her job, and performing activities she had previously enjoyed such as reading and cooking. She did not know if she and her husband had yet "found a new normal." Also, she has been taking anti-anxiety medication. Dan testified to withdrawing within himself and hiding his misery, although he described one occasion on the way to work when he had to pull over to the side of the road and weep. He testified to losing his sense of purpose, being empty, and believing the future will not be better. Dan has been taking antidepressants. Union Pacific's counsel did not cross-examine the Leggs regarding their grief or produce any evidence that would call into question whether their emotions were sincere, whether their reactions were justified, or whether there was any cause for their grief other than Dustin's death.

The Leggs rely on *Cornelison v. Aggregate Haulers, Inc.*, 777 S.W.2d 542 (Tex. App.—Fort Worth 1989, writ denied). The court in *Cornelison* concluded that since the deceased's parents provided uncontradicted testimony of their emotional distress, pain, and anguish as a result of their son's death from the defendant's negligence, an answer of "zero" as to the sum of money that would reasonably and fairly compensate them under the circumstances of that case was against the great weight and preponderance of the evidence and was manifestly too small, grossly inadequate, and unjust. 777 S.W.2d at 547-48. However, *Cornelison* does not stand for the proposition that if a decedent's parent testifies to some level of emotional pain and suffering, and the defense does not contradict their testimony with evidence, then the jury is *obligated* to award

6

mental anguish or loss of companionship damages. Without explaining its rationale, the *Cornelison* court found that the failure of the jury to award any damages under the specific circumstances of that case was against the great weight and preponderance of the evidence in that case. *See id.* We do not find *Cornelison* controlling under the circumstances presented in this case.

The term "mental anguish" implies a relatively high degree of mental pain and distress, and includes a mental sensation of pain resulting from such emotions as grief, disappointment, indignation, wounded pride, shame, despair, and humiliation. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) (quoting *Trevino v. Southwestern Bell Tel. Co.*, 582 S.W.2d 582, 584 (Tex. Civ. App.—Corpus Christi 1979, no writ)). This is an "admittedly nebulous definition" and can involve symptoms that are subjective in nature. *See id.* As this Court has observed, "if the indicia of injury are more subjective in nature than objective, appellate courts are generally more reluctant to hold a jury finding of no damages contrary to the great weight and preponderance of the evidence." *Byrd v. Westerhof*, No. 03-00-00180-CV, 2001 Tex. App. LEXIS 828, at *7 (Tex. App.—Austin Feb. 8, 2001, no pet.) (not designated for publication). Thus, courts of appeals have affirmed zero-damages jury verdicts on the issue of mental anguish. *See Gant v. Dumas Glass & Mirror, Inc.*, 935 S.W.2d 202, 209 (Tex. App.—Amarillo 1996, no writ) (jury's failure to find damages based on subjective testimony of mental anguish "will not be disturbed"); *Rodriguez v. Kvasnicka*, 710 S.W.2d 724, 727 (Tex. App.—Corpus Christi 1986, no writ) (negative answer on damages not disturbed where testimony "subjective in nature" because matters of pain and suffering are "necessarily speculative"); *see also Trailways, Inc. v. Clark*, 794 S.W.2d 479, 492-

7

93 (Tex. App.—Corpus Christi 1990, writ denied) (affirming awards of one dollar for surviving spouse's mental anguish and loss of companionship damages).

The jury observes all witnesses and has the responsibility to determine the weight to be given their testimony. *See Quiroz v. Covenant Health Sys.*, 234 S.W.3d 74, 84 (Tex. App.—El Paso 2007, pet. denied). It is particularly within the province of the jury to resolve matters of pain and suffering and set the amount of damages. *See Larrumbide v. Doctors Health Facilities*, 734 S.W.2d 685, 690 (Tex. App.—Dallas 1987, writ denied); *Rodriguez*, 710 S.W.2d at 727 (citing *Badger v. Symon*, 661 S.W.2d 163, 166 (Tex. App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.)). We will not set aside a jury finding on appeal merely because we would have reached a different conclusion, but will do so only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 560 (Tex. App.—Austin 2004, no pet.) (citing *Cain*, 709 S.W.2d at 176).

While we agree that in normal circumstances a parent will suffer grief from the loss of the parent's child, whether such grief rises to the level of mental anguish that is compensable is generally within the province of the jury. *See Moore v. Lillebo*, 722 S.W.2d 683, 686 (Tex. 1986) ("assessment of the resulting grief is a task for which juries have traditionally been considered well-suited" (quoting *Connell v. Steel Haulers, Inc.*, 455 F.2d 688, 691 (8th Cir. 1972))). The jury heard Dan and Suzanne Legg's testimony regarding their grief, but declined to award the Leggs damages for mental anguish or loss of companionship. In considering all the evidence, we do not find the

8

verdict to be so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Dow Chem. Co.*, 46 S.W.3d at 242.

In their second point on appeal, the Leggs argue that the judgment should be reversed based on error in the jury selection process. A person is disqualified from serving on a jury if he has a bias or prejudice in favor of or against a party or claim. *Murff v. Pass*, 249 S.W.3d 407, 411 (Tex. 2008). Bias is an inclination toward one side of an issue, but is not disqualifying unless the venire member's state of mind leads to the natural inference that he will not act with impartiality. *Cortez v. HCCI–San Antonio, Inc.*, 159 S.W.3d 87, 94 (Tex. 2005) (quoting *Compton v. Henrie*, 364 S.W.2d 179, 182 (Tex. 1963)). Trial judges are present in the courtroom and are in the best position to evaluate the sincerity and attitude of individual venire members, and therefore, they are given wide latitude in determining whether a venire member is impermissibly partial. *Murff*, 249 S.W.3d at 411 (citing *Cortez*, 159 S.W.3d at 93). Because statements of partiality may be the result of inappropriate leading questions, confusion, misunderstanding, ignorance of the law, or merely "loose words spoken in warm debate," they do not necessarily establish disqualification. *Cortez*, 159 S.W.3d at 92-93 (quoting *Compton*, 364 S.W.2d at 182). The trial court must disqualify a venire member when bias or prejudice for or against a party has been established as a matter of law. *Malone v. Foster*, 977 S.W.2d 562, 564 (Tex. 1998). Conversely, the trial court exercises discretion in deciding whether to strike a venire member when bias or prejudice has not been established as a matter of law. *Cortez*, 159 S.W.3d at 93.

The Leggs contend that a venire member named Stevenson should have been disqualified for cause. Stevenson expressed concern during voir dire about frivolous lawsuits and

people who "sue the railroad for no good reason." She admitted to the Leggs' counsel that, based on her opinions on this matter, she had already "prejudged" the case such that drivers hit by trains at crossings are at fault. However, according to the Texas Supreme Court, "the relevant inquiry is not where jurors *start* but where they are likely to *end*." *Id.* at 94. Thus, an initial leaning is not disqualifying if the juror can act impartially based on the evidence. Stevenson's admission of prejudgment was made "without hearing any of the facts." She also stated she "would be fair," would "hear both sides," and would "have to know the facts" before choosing sides.

The Leggs also point to Stevenson's raising her hand, along with over 20 other venire members, in response to a discussion regarding putting a value on human life. One venire member expressed his opinion that a family should not get money for a loss of life because "God chose it." The Leggs' counsel then posed the following question to the panel:

> Anyone else here that feels the same as Mr. Clark, that if someone is killed in a railroad grade crossing, it's—and I'm—I want to phrase this correctly because I don't want to offend anybody—that it's a reflection of it's God's time for you to go—is that how you said it?—and you don't feel like it would be appropriate to award damages—money damages in that situation, period?

We consider this question to have the potential to be misconstrued and, therefore, to be insufficient to result in disqualification as a matter of law for a group of venire members who simply raised their hands in response. *See Smith v. Dean*, 232 S.W.3d 181, 191 (Tex. App.—Fort Worth 2007, pet. denied) (venire members "did not express unequivocal bias by merely raising their hands"); *Sosa v. Cardenas*, 20 S.W.3d 8, 11 (Tex. App.—San Antonio 2000, no pet.) (neither bias nor prejudice shown by general questions that are insufficient to satisfy diligence required in probing

venire member's mind).   Based on the Leggs' counsel's question, Stevenson may have been expressing her belief merely that a person's death is a result of God's timing, or alternatively that money damages should not be awarded if a particular death is a matter of God's timing rather than a result of another's negligence.  The district court's refusal to strike Stevenson was a valid exercise of discretion, given the possibility of her confusion or misunderstanding in raising her hand in response to this question.  *See Cortez*, 159 S.W.3d at 92.  There was no follow-up questioning of Stevenson on this issue.

The Leggs next contend that a venire member named Biar should have been disqualified for cause.  Biar also raised her hand with over 20 other venire members in response to a question by the Leggs' counsel.  Biar's raising her hand occurred immediately after the following discussion between the Leggs' counsel and an unidentified venire member:

> UNIDENTIFIED:  . . . .  I can feel for the family, I really can, but the money is not going to make things better, you know?  I just don't see how it could.  It's always going to be there, the pain.  How is the money going to help stop the pain?
>
> MR. CROW:  . . . .  [Y]ou just don't feel that it's appropriate to award money damages as the remedy?
>
> UNIDENTIFIED:  No, and I don't know what the answers would be, but I don't see how the money is going to—
>
> MR. CROW:  Because it can't, it can't.  But you don't believe it would be in furtherance of justice or be appropriate or that you could do that as a juror in this case; is that correct?
>
> UNIDENTIFIED:  That's—yes, that's correct.
>
> MR. CROW:  Okay.  Everyone else feel the same way?

According to the Leggs, by raising her hand, Biar was stating her inability to award any damages for the loss of a life. However, similar to the questioning preceding Stevenson's raising her hand, we consider this discussion to have the potential to be misconstrued and, therefore, to be insufficient to result in disqualification as a matter of law for a group of venire members who simply raised their hands in response. *See Smith*, 232 S.W.3d at 191; *Sosa*, 20 S.W.3d at 11. Based on the discussion with the unidentified venire member, Biar may have been expressing her belief merely that money cannot help stop the pain from the loss of a loved one, or that it could not completely bring about justice. The district court's refusal to strike Biar was a valid exercise of discretion, given the possibility of her confusion or misunderstanding in raising her hand in response to counsel's question. *See Cortez*, 159 S.W.3d at 92. As with Stevenson, there was no follow-up questioning of Biar on this issue.

The Leggs also challenge the district court's denial of their challenge for cause of a venire member named Whitmire. Concerning damages, Whitmire stated that "loss of companionship is not a category that [she] would be willing to give damages for at all." To the extent Whitmire's statement concerning loss of companionship could be construed to suggest bias, further questioning would be required to determine whether she could follow the judge's instructions on damages and could be fair and impartial. *See id.* at 93 ("[F]urther questioning may prevent an impartial veniremember from being disqualified by mistake."); *McMillan v. State Farm Lloyds*, 180 S.W.3d 183, 196-97 (Tex. App.—Austin 2005, pet. denied) (venire member who stated awarding mental anguish damages was "against her nature" not disqualified as matter of law when she also stated she would follow the judge's instructions and apply evidentiary standards for proof of mental anguish).

12

Union Pacific contends that Whitmire was rehabilitated when she stated that "[u]nfortunately, I think I'd be a good juror." It is true that Whitmire's statement regarding being a "good juror" came after Union Pacific's counsel's questioning the panel whether they could "fairly consider everything, fairly consider mental anguish, fairly consider loss of financial support, all those things" and could "be open-minded to consider the evidence." However, Whitmire's statement also followed Union Pacific's counsel's statement during voir dire that "[y]ou do not have to promise or agree or *be willing* to award any particular kind of damages." (Emphasis added.)

The Leggs failed to preserve their complaint on this point. A complaining party must advise the trial court that (1) he would exhaust his peremptory challenges, and (2) after exercising his peremptory challenges, specific objectionable jurors would remain on the jury list. *Hallett v. Houston Nw. Med. Ctr.*, 689 S.W.2d 888, 890 (Tex. 1985). Moreover, any such error is waived if the party does not object in this manner until after the jury is selected. *Compare id.* (complaint waived if not made "prior to" peremptory challenges), *with Cortez*, 159 S.W.3d at 90-91 (error preserved where objections made "roughly contemporaneous" with delivery of strike list but "before the jury was seated"). While the Leggs did present their objections in a proper manner, the objections were made after their peremptory strikes were exercised and after the jurors' names were then announced. This was untimely. *See Cortez*, 159 S.W.3d at 90-91; *Hallett*, 689 S.W.2d at 890. Consequently, any error in the district court's refusal to strike Whitmire for cause is waived.

Having concluded that the evidence is legally sufficient to support the district court's damages award for Dustin Legg's pain and mental anguish, that the evidence is factually sufficient

to support the court's award of no damages for the Leggs' mental anguish and loss of companionship and society, and that there was no reversible error in the court's refusal to strike certain venire members for cause, we affirm the judgment of the district court.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Patterson and Waldrop

Affirmed

Filed:   August 12, 2009